591 F.2d 318
 7 O.S.H. Cas.(BNA) 1256
 Johnnie L. HORN, Plaintiff-Appellant,
v.
C. L. OSBORN CONTRACTING COMPANY, Defendant-Third-Party
Plaintiff- Appellee-Cross-Appellant,
v.
BAMA UTILITY CONTRACTORS, INC., Third-Party Defendant-Cross-Appellee.
 No. 77-1112.
 United States Court of Appeals,
Fifth Circuit.
 March 16, 1979.
Rehearing and Rehearing En Banc Denied May 7, 1979.
 
 Billy E. Moore, J. Sherrod Taylor, B. Randall Blackwood, Columbus, Ga., for Johnnie L. Horn.
 S. E. Kelly, Ernest Kirk, II, Columbus, Ga., for Osborn Contracting Co.
 Richard A. Marchetti, Columbus, Ga., for Bama Utility.
 Appeals from the United States District Court for the Middle District of Georgia.
 Before MORGAN, RONEY and VANCE, Circuit Judges.
 LEWIS R. MORGAN, Circuit Judge:
 
 
 1
 This appeal[1] concerns primarily an action for damages by Johnnie L. Horn (Horn), an employee of Bama Utility Contractors, Inc. (Bama), against C. L. Osborn Contracting Company (Osborn) for on-the-job injuries.
 
 FACTS
 
 2
 The Board of Water Commissioners of the City of Columbus, Georgia contracted with Osborn, as a general contractor, to construct certain improvements in its sewer system. Osborn thereafter subcontracted a portion of the work to Bama. Bama was furnished with a copy of the plans and specifications applicable to the area where Bama was to perform its subcontract work together with a design plan which had been supplied to Osborn by the Board of Water Commissioners. Thereafter Bama used its own equipment and employees in carrying out its work and Osborn provided no equipment or employees with respect thereto.[2] At all times mentioned herein the plaintiff, Horn, was an employee of Bama and was directly supervised by other employees of Bama. His work consisted of the laying of sewer pipe in an excavation or ditch. While so employed he sustained personal injuries on two separate occasions. On July 2, 1974, while Horn was working in a ditch excavated to a depth of approximately 16 feet, the sides of the ditch caved in causing Horn certain personal injuries. Having recovered from the injuries sustained in that incident, Horn returned to his job and was working on the same project in another ditch approximately 9 feet deep when, on October 9, 1974, he sustained additional personal injuries when the sides of this ditch caved in.
 
 
 3
 Horn concedes that he was an employee of Bama, and not of Osborn and that the relationship of Bama to Osborn was that of an independent contractor. Furthermore, Horn concedes that because of the injuries above referred to, he has received the benefits provided by the Workmans Compensation insurance coverage carried by Bama. In this action Horn seeks to recover general damages from the general contractor Osborn.
 
 
 4
 Osborn, under an indemnity provision contained in the subcontract, filed a third party action against Bama claiming a contingent right to recover against Bama in the event of any recovery by Horn against Osborn.
 
 
 5
 The district court granted a motion for summary judgment filed by Osborn and further granted the motion for summary judgment filed by Bama, reasoning, as to the latter, that since any liability of the Third Party Defendant Bama is contingent upon Osborn's liability the motion filed by Bama must also be sustained.
 
 DISCUSSION
 
 6
 Georgia law applies in this case and Ga.Code Ann. § 105-501 provides:
 
 
 7
 The employer generally is not responsible for torts committed by his employee when the latter exercises an independent business, and is not subject to the immediate direction and control of the employer.
 
 
 8
 There are, however, certain statutory exceptions to this general rule and Horn contends that the facts of this case bring his action within some of those exceptions.
 
 
 9
 In our review of this case, because the essential facts are not in dispute, the question of the legal relations arising therefrom is one of law and the district court's determination is not insulated by the "clearly erroneous" rule. Therefore, this court is free to substitute its judgment on the law before it.
 
 
 10
 The first arguably applicable statutory exception imposes liability on the employer (general contractor Osborn)
 
 
 11
 (i)f, according to previous knowledge and experience, the work to be done is in its nature dangerous to others, however carefully performed.
 
 
 12
 Ga.Code Ann. § 105-502(2).
 
 
 13
 In construing this section, Georgia courts have held that work is not "dangerous to others, however carefully performed" if the danger results from doing the work in an unsafe manner when there is a safe way of doing the work. Hodge v. United States, 310 F.Supp. 1090, 1104 (M.D.Ga.1969), Affirmed and adopted, 424 F.2d 545 (5th Cir. 1970). Here it is undisputed that there were in fact several safe ways of doing the work, e. g., bracing, sheeting or "V" ing the ditch. Consequently, we find that the construction of the sewer line involving the excavation of the ditch, when viewed in the light of the undisputed facts reflected by the record, was not inherently dangerous,[3] and was not "in its nature dangerous to others, however carefully performed," so as to charge Osborn with the duty of providing Horn a safe place to work.
 
 
 14
 The second arguably applicable statutory exception imposes liability on the employer (general contractor Osborn)
 
 
 15
 (i)f the wrongful act is the violation of a duty imposed by statute.
 
 
 16
 Ga.Code Ann. § 105-502(4). Horn argues that the contract between the general contractor and the subcontractor is subject to the Occupational Safety and Health Act (OSHA).[4] Consequently, there was imposed upon the general contractor a duty to abide by the regulations promulgated under OSHA as they applied to the excavation and the shoring of the walls of ditches.[5] Additionally, Horn argues that, assuming OSHA applies, Section 653(b)(2) makes standards promulgated under other health and safety acts applicable to employees covered by OSHA[6] and that one such standard is a regulation promulgated under the Contract Work Hours and Safety Standards Act[7] (CWHSSA) which imposes joint and several responsibility on the general contractor.[8]
 
 
 17
 In addressing these arguments we find it unnecessary to decide whether in this particular instance there was, as Osborn argues, an inappropriate attempt at a private action based solely on a violation of OSHA[9] or, as Horn asserts, an independent right of action created by Georgia statute. For even were we to agree with Horn that Osborn was "engaged in a business affecting commerce" so as to be within OSHA's definition of an employer[10] and that an independent right of action was thereby created by Georgia statute, it seems that OSHA, by its own terms, precludes its applicability.
 
 
 18
 We reach this conclusion only after a thorough analysis of the provision on which Horn's argument is founded, 29 U.S.C. § 654(a), which provides:
 
 Each employer
 
 19
 (1) shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or likely to cause death or serious physical harm to his employees.
 
 
 20
 (2) shall comply with occupational safety and health standards promulgated under this chapter.
 
 
 21
 Stated precisely, our inquiry focuses on whether the term "employer" as used in § 654(a) should be interpreted to envelop general contractors as joint or statutory employers of an independent subcontractor's employees and thus impose upon them a duty to provide the employee with a safe working environment. In making our determination we are guided by our decision in Southeast Contractors, Inc. v. Dunlop, 512 F.2d 675 (5th Cir. 1975), in which we reversed the decision of the Occupational Safety and Review Commission, reported at 1 OSHC 1713 (1974), and expressed our agreement with the well reasoned dissent of Chairman Moran. In his dissent Chairman Moran in construing the word "employer" as it is used in § 654(a), first points out that the provision does not necessarily mean that the employer is in violation of 29 U.S.C. § 654(a)(2) for every failure to comply with a safety standard which occurs within its worksite. He explained that an employer cannot be held in violation of the above subsection if His employees are not affected by the noncompliance with a standard. And if there was any doubt as to what he meant by "His employee" this was eliminated by his reiteration of the general rule that a contractor is not responsible for the acts of his subcontractors or their employees. In light of this precedent and because it is conceded that Horn was an employee of Bama, we must hold this "statutory duty" exception inapplicable.
 
 
 22
 The third arguably applicable statutory exception imposes liability on an employer (general contractor Osborn)
 
 
 23
 (i)f the wrongful act is the violation of a duty imposed by express contract upon the employer.
 
 
 24
 Ga.Code Ann. § 105-502(3). Horn argues that because the general contract between the Board of Water Commissioners and Osborn imposed a duty to abide by the regulations promulgated under OSHA and Section 107 of CWHSSA,[11] that when those regulations were not followed the resulting breach of duty was sufficient to impose liability based upon the above "express duty" exception.[12] The district court, however, interpreted the contractual provision as requiring that Osborn abide by the regulations only if the underlying Acts were applicable by their terms (which they are not as discussed earlier). Additionally, Osborn contends that the regulations under OSHA could be no broader in their application than the specific congressional intent behind the act from which they were promulgated. This intent was declared to be, at 29 U.S.C. § 653(b)(4), that OSHA would not in any manner affect, enlarge, or diminish the rights, duties, or liabilities of employers and employees. Consequently, Osborn asserts that the regulations cannot be utilized to expand its liability to Bama's employee Horn. It seems to this court, however, that the focus has been on the statutes themselves when it should have been on the contract. It is clear that the contract incorporated the Regulations only, not the Acts.[13] It is obvious that Osborn and the Board of Water Commissioners referred to and incorporated the OSHA and CWHSSA regulations as a mere convenience to relieve them from having to draw up their own set of construction guidelines. Hence, we think it apparent that the contract sought to incorporate discernible standards for safe construction and not the nebulous intentions of Congress as to the scope of the Act's application.
 
 
 25
 We find, therefore, that there was a duty imposed upon Osborn by an express contract provision. Consequently, Ga.Code Ann. § 105-502(3) applies to provide Horn with an exception to the general rule of nonliability of a general contractor for the acts of his independent subcontractor.[14] Accordingly, the district court is reversed as to this issue.
 
 
 26
 Finally, this court agrees with the district court in its finding that there is no factual basis for Horn's allegation that the proximate cause of his injuries was the "wilful and wanton negligence" of Osborn in permitting Horn to work in a ditch that had been improperly opened and in failing to provide safeguards to prevent the ditch from collapsing.
 
 
 27
 The ruling of the district court granting Osborn's motion for summary judgment is reversed and remanded for proceedings not inconsistent with this opinion. Accordingly, the ruling of the district court granting Bama's motion for summary judgment is also reversed and remanded.
 
 
 28
 REVERSED and REMANDED.
 
 RONEY, Circuit Judge, dissenting:
 
 29
 Although I agree with the panel decision in all matters that affirm the trial court, I respectfully dissent from the result finally reached.
 
 
 30
 As I understand it, the Court reverses the district court on this reasoning: C. L. Osborn Contracting Company incorporated in its contract the OSHA and CWHSSA regulations as a convenient set of construction guidelines for this work; the failure to follow these guidelines caused the accident; although an employer is generally not responsible for the torts committed by an independent contractor (Ga.Code Ann. § 105-501), the employer is liable "if the wrongful act is the violation of a duty imposed by express contract upon the employer" (Ga.Code Ann. § 105-502(3)); since the failure to follow the guidelines was a "wrongful act" and violated the duty imposed by contract, the employer is liable. I disagree that the beneficiary of this contractually grounded liability can be the employee of the subcontractor who undertook to perform the work under the contract.
 
 
 31
 In this case, the entire section of the construction project was subcontracted to Horn's employer, Bama Utility Contractors, Inc. Bama Utility undertook all facets of the work, including the digging of the trenches which allegedly caused its employee's injuries. To permit an employee of a subcontractor to recover against the general contractor because the subcontractor improperly performed its contract with the general contractor seems to me to fly in the face of settled jurisprudence in this field of law. This is not a case where Osborn has been called upon to respond in damages for negligence to either the owner, with which it contracted, or any third party injured by the work. The claimant, rather, is one who was at all times subject to the immediate and exclusive supervision and control of the party whose dereliction of duty caused his injury. Osborn's own employees, if they had been doing the work, would be limited to workmen's compensation benefits. Why should the employees of a subcontractor who has undertaken all of the work on this section be in any better position?
 
 
 32
 The fallacy of the result here reached would be starkly presented if Horn Were the subcontractor, a sole proprietor, doing all the work himself. If he did not perform according to the contract's safety requirements and was injured thereby, his suit against the general contractor would be based on the theory that his own failure to properly do the work was a breach of contract between the general contractor and the owner.
 
 
 33
 None of the cases cited even remotely suggests that an employee of an independent contractor is a person within the scope and protection of the statute's protection contained in Ga.Code Ann. § 105-502(3) and I am unwilling to interpret that provision to reach such an anomalous result. I would affirm the district court across the board.
 
 
 
 [1]
 The jurisdiction of the district court was based upon 28 U.S.C. § 1332 (1966) in that the plaintiff and the defendant are citizens of different states and the matter in controversy exceeds $10,000 exclusive of interest and costs
 
 
 [2]
 Bama hired, fired and supervised its own employees and Osborn did not at any time hire, fire or supervise any employee working with Bama and Osborn did not supervise any work activity performed by Bama or exercise any control or supervision over any employee of Bama. The Board of Water Commissioners furnished an engineer-inspector on the entire project and that inspector, as well as an inspector for Osborn, did inspect the work product of Bama; however, these periodic visits were only for the purpose of observing the progress that was being made toward completion of the job and did not involve any direction as to how the work was to be accomplished by Bama
 
 
 [3]
 See also, W. Prosser, The Law of Torts 473 & n. 48 (4th ed. 1971)
 
 
 [4]
 29 U.S.C.A. §§ 651 et seq. (1975)
 
 
 [5]
 See, 29 U.S.C.A. § 654(a)(2) (1975)
 
 
 [6]
 29 U.S.C.A. § 653(b)(2) provides:
 The safety and health standards promulgated under the Act of June 30, 1936, commonly known as the Walsh-Healey Act, the Service Contract Act of 1965, Public Law 91-54, Act of August 9, 1969, Public Law 85-742, Act of August 23, 1958, and the National Foundation of Arts and Humanities Act are superseded on the effective date of corresponding standards, promulgated under this chapter, which are determined by the Secretary to be more effective. Standards issued under the laws listed in this paragraph and in effect on or after the effective date of this chapter shall be deemed to be occupational safety and health standards issued under this chapter, as well as under such other Acts.
 
 
 [7]
 40 U.S.C.A. § 327 et seq. (1969)
 
 
 [8]
 Federal Register, Vol. 39, No. 122 § 1926-16
 
 
 [9]
 See, Jeter v. St. Regis Paper Co., 507 F.2d 973, 976, 977 (5th Cir. 1975)
 
 
 [10]
 See, 29 U.S.C.A. § 652(5) (1975)
 
 
 [11]
 The general contract between the Board of Water Commissioners and Osborn provided in pertinent part:
 Safety and Health Regulations: The contractor shall comply with Department of Labor Safety and Health Regulations for Construction promulgated under the Occupational and Safety Health Act of 1970 (PL 91-596) and under § 107 of Contract Work Hours and Safety Standards Act (PL 91-54).
 And under a general provision titled "Excavation" it read:
 (a) Bracing and Sheeting: The sides of all trenches and excavation for sewers and structures shall be securely held by staybracing, or by skeleton or by solid sheeting and bracing, as required by soil conditions encountered and in compliance with the Occupational Safety and Health Act of 1970.
 
 
 [12]
 Georgia courts have interpreted Ga.Code Ann. § 105-502(3) as allowing an injured individual to ground his argument on a contract provision contained in a contract between the owner and the general contractor even where the actual breach of the provision was caused by a subcontractor not a party to the contract. See, Southern Mills, Inc. v. Newton, 91 Ga.App. 738, 87 S.E.2d 109 (1955)
 
 
 [13]
 See n. 11 supra
 
 
 [14]
 We do not, as the dissent intimates, dictate that Horn should prevail on the merits. We do hold, however, that Ga.Code Ann. § 105-502(3) applies so as to give Horn the opportunity to present evidence and that Horn should not be foreclosed this opportunity by the granting of a summary judgment