**William FLOYD and Sandra Floyd, Plaintiffs–Appellants,**

v.

**Dale BENSON, d/b/a Benson Construction Company, Defendant,**

**and**

**Rawlings Sporting Goods Company, Inc., Defendant–Respondent.**

No. 15407.

Missouri Court of Appeals, Southern District, Division Two.

July 1, 1988.

David L. Steelman, Salem, for plaintiffs-appellants.

Kent O. Hyde, William C. Love, Harrison, Tucker, Geisler & Hyde, Springfield, for defendant-respondent.

FLANIGAN, Judge.

Plaintiff William Floyd brought this action against defendants Dale Benson and Rawlings Sporting Goods Company, Inc., a Missouri corporation, ("Rawlings"), seeking damages for personal injuries which Floyd sustained by reason of an incident

2. Defendants' motion to strike plaintiffs' brief for failure to comply with Rule 84.04 is denied.

which occurred on February 11, 1984, on land occupied by Rawlings located in Texas County. At the time of the incident Floyd, an employee of Benson, was working with Benson in excavating a trench on the Rawlings land for the purpose of installing a new sewer. The work was being performed pursuant to a contract between Rawlings and Benson. During the course of the installation Floyd, while working in the trench which Benson had dug with a backhoe, was injured when the bucket of the backhoe "which was in close proximity to [Floyd] was suddenly engaged and the bucket rapidly swung and made contact with [Floyd], resulting in the alleged injuries."

Count III of Floyd's petition sought damages from Rawlings "on the basis that the work which Rawlings hired Benson to do was inherently dangerous and Rawlings failed to see that adequate precautions were taken to provide for the safety of persons such as Floyd." In Count V Floyd alleged that Rawlings was liable to him for his injuries on the basis that Benson's negligence was attributable to Rawlings in that Rawlings had a nondelegable duty to protect third persons from injuries resulting from the inherently dangerous activity which Rawlings hired Benson to do. In separate counts co-plaintiff Sandra Floyd, Floyd's wife, sought damages on her derivative claim.

After the parties had conducted extensive discovery, Rawlings filed a motion for summary judgment. The trial court sustained the motion and entered judgment against plaintiffs and in favor of Rawlings. The parties agree that if the ruling of the trial court was erroneous with respect to Floyd's claims, it was also erroneous with respect to the claims of Sandra Floyd. In accordance with the rule then in effect the trial court designated its judgment as a final judgment for purposes of appeal. Plaintiffs appeal.

It is the position of Floyd that Rawlings was not entitled to a summary judgment and that the trial court erred in granting same. The parties agree that Benson was an independent contractor. Floyd concedes that the general rule is that an employer of an independent contractor is not liable for injury caused to a third person by the tortious act or omission of the independent contractor or his servants. Floyd argues, however, that Rawlings contracted with Benson for work that was inherently dangerous and that Floyd's injuries fall within the "inherently dangerous" exception to the general rule.

It is the position of Rawlings that the trial court properly granted the summary judgment because "the inherently dangerous activity doctrine does not apply to this case." More specifically, Rawlings states that "the activity which caused the damage was not inherently dangerous.... Floyd was not injured because of the collapse of the trench but because he was struck in the head by a negligently operated backhoe. The *activity* which *caused* Floyd's injury was not inherently dangerous."

In reviewing the action of the trial court in granting the summary judgment, this court "must scrutinize the record in the light most favorable to the party against whom the motion was filed, according to that party all reasonable inferences which may be drawn from the evidence." *Gast v. Ebert*, 739 S.W.2d 545, 546 (Mo. banc 1987). Summary judgment is a drastic remedy and is inappropriate unless Rawlings has shown by unassailable proof that it is entitled to judgment as a matter of law. The burden is on Rawlings, as the party moving for summary judgment, to demonstrate there is no genuine issue of fact. A genuine issue of fact exists when there is the slightest doubt about a material fact. *Id.; Peer v. MFA Milling Co.*, 578 S.W.2d 291, 292[1] (Mo.App. banc 1979). "In negligence cases, summary judgment is generally not as feasible as in other kinds of cases. *Blackburn v. Swift*, 457 S.W.2d 805, 807 (Mo.1970)." *Brown v. Upjohn Co.*, 655 S.W.2d 758, 760 (Mo.App.1983).

Each side has filed an excellent brief. The statement of facts portion of Floyd's

brief was, with certain additions, "adopted and incorporated in its entirety" in Rawlings' brief as respondent.

On January 30, 1984, Benson submitted to Rawlings a written bid to dig a trench and lay a sewer line on Rawlings' property for the sum of $930. The bid recited: "All work to be completed in a workmanlike manner, according to standard practices.... Owner to carry fire, tornado and other necessary insurance. Our workers are fully covered by Workmen's Compensation insurance." On February 3, 1984, Rawlings gave Benson a "purchase order" confirming and accepting his bid. Benson employed Floyd, at $8.00 per hour, to help him perform the job.

On February 10, 1984, Benson and Floyd went to the Rawlings property and Benson used his backhoe to locate the main on the municipal sewer line to which the two men would connect the sewer pipe they were going to lay.

The next day Benson and Floyd returned to the Rawlings property to do the job. Benson determined how the job would be performed. Benson decided not to shore the trench or to slope the sides of the trench to prevent it from collapsing. Benson decided not to dig the entire trench at one time but to dig it in segments approximately six feet in length.

The method used was that Benson would dig a six-foot segment and Floyd would then go into the trench, which was about six feet deep and two feet wide, and lay the pipe. That segment would then be covered by Benson, with the use of the backhoe, and the procedure would be repeated with respect to the next six-foot segment. Benson would not be on the backhoe or operating it while Floyd was in the trench but the backhoe would always be in close proximity to Floyd while he was in the trench and the engine would not be turned off.

Benson testified that if he had shored the trench, he "could just dig the trench, then get in there and work on it," but that "if you don't shore it, you dig a little section

and lay the pipe and then dig another little section and lay the pipe." Benson also testified, under questioning by Rawlings' counsel, that although he did not operate the backhoe while Floyd was laying the pipe, he, Benson, was "just sitting there waiting for [Floyd] to get the piece laid he was working on.... [Floyd] would lay this section and [I] would dig and cover it up as we went.... So that is why [I] was still up there close to that open trench because [I] would wait for him to get done and get out and close it in."

This was not the proper procedure for this job. Two experts gave depositions to the effect that the proper procedure would have been for Benson to dig the entire length of trench at one time and shore it or slope the sides in order to prevent a cave-in. If this procedure had been followed, Benson could have moved the backhoe away from the trench and Floyd would not have been required to work close to a backhoe with its engine running.

After Floyd and Benson had laid about 18 to 24 feet of sewer pipe in the trench, Floyd, while standing in the trench, reached out of the trench to get a piece of sewer pipe. At that time the boom and shovel of the backhoe swung around and struck Floyd in the head. Benson may have been climbing onto the backhoe when the boom and shovel struck Floyd. Benson in some manner accidentally activated the boom and shovel, causing it to swing. The machine would not have swung into Floyd's head if the engine had been turned off while Floyd was in the trench.

There was expert testimony that Benson was "grossly neglectful." Depositions of two experts contain testimony to the effect that the work being performed by Benson and Floyd at the time of Floyd's injury was inherently dangerous.

Floyd's expert, Gary Friend, under questioning by Rawlings' counsel, identified a publication of the National Safety Council entitled "Trench Excavation." The document enumerated certain hazards of trench excavation including "being struck by moving equipment."

The general rule is that the employer of an independent contractor is not liable for injury caused to a third person by the tortious act or omission of the independent contractor or his servants. *Smith v. Inter-Cty. Telephone Co.*, 559 S.W.2d 518, 521[2] (Mo. banc 1977); *Hofstetter v. Union Elec. Co.*, 724 S.W.2d 527, 529–530 (Mo.App.1986). An exception to the general rule exists where the work subcontracted involves a "special or inherent danger to others." *Smith v. Inter-Cty. Telephone Co.*, supra, at 521; *Hofstetter v. Union Elec. Co.*, supra, at 530. Although some states hold otherwise, in Missouri the servant of the independent contractor is within the class of persons entitled to the benefit of the exception. *Smith v. Inter-Cty. Telephone Co.*, supra, at 523; *Mallory v. Louisiana Pure Ice & Supply Co.*, 320 Mo. 95, 6 S.W.2d 617, 626[7] (1928); *Hofstetter v. Union Elec. Co.*, supra, at 529 (fn. 1).

There is substantial authority for the proposition that the question of whether particular work is "inherently dangerous" is generally a question of fact for the jury. *Donovan v. General Motors*, 762 F.2d 701, 703[3] (8th Cir.1985); *Schultz & Lindsay Construction Company v. Erickson*, 352 F.2d 425, 436[18] (8th Cir.1965); *Caudel v. East Bay Mun. Utility Dist.*, 165 Cal.App. 3d 1, 211 Cal.Rptr. 222, 227[6] (1985); *Castro v. State*, 114 Cal.App.3d 503, 170 Cal. Rptr. 734, 738[3] (1981); *Western Stock Center, Inc. v. Sevit, Inc.*, 195 Colo. 372, 578 P.2d 1045, 1050[10] (1978); The American Law of Torts, Speiser–Krause–Gans, Vol. I, § 4:28, p. 699 (1983); 41 Am.Jur.2d 829, Ind. Contr'r, § 53.

Out-state authorities have reached conflicting results on the liability of an employer for injuries to an employee of an independent contractor arising out of improper trenching.[1] In *Griesel v. Dart Industries, Inc.*, 23 Cal.3d 578, 153 Cal.Rptr. 213, 591 P.2d 503 (1979), *Widman v. Rossmoor Sanitation, Inc.*, 19 Cal.App.3d

734, 97 Cal.Rptr. 52 (1971), and *Heath v. Huth Engineers, Inc.*, 279 Pa.Super. 90, 420 A.2d 758 (1980), the employer hired an independent contractor to do work involving the digging of a trench on the employer's premises. In each case an employee of the independent contractor was injured by a cave-in of the trench. The independent contractor failed to take the precaution of shoring or bracing the trench walls or sloping them. Those cases hold that trenching in that manner was an inherently dangerous activity and that the employer was liable to the injured person.

On the other hand, some cases hold that the employer is not liable to an independent contractor's employee who is injured by a cave-in of a trench negligently excavated by the independent contractor on the employer's premises. *Horn v. C.L. Osborn Contracting Co.*, 591 F.2d 318 (5th Cir. 1979); *Smith v. P. & B. Corp.*, 179 Ind. App. 693, 386 N.E.2d 1232 (1979); *Cummings v. Hoosier Marine Properties, Inc.*, 173 Ind.App. 372, 363 N.E.2d 1266 (1977); *Balagna v. Shawnee County*, 233 Kan. 1068, 668 P.2d 157 (1983); *Hare v. Federal Compress and Warehouse Co.*, 359 F.Supp. 214 (N.D.Miss.1973); *Kemp v. Bechtel Const. Co.*, 720 P.2d 270 (Mont. 1986); *Peterson v. City of Golden Valley, N.D.*, 308 N.W.2d 550 (N.D.1981); *Kemp v. Knox County*, 556 S.W.2d 546 (Tenn.App. 1977). In each of those cases the court rejected the argument that the digging of a trench was inherently dangerous or involved a peculiar risk unless special precautions were taken.

In *Peterson* the employer hired the independent contractor to install a sewer. The contractor dug a trench approximately six feet deep but failed to shore it or slope its sides. Plaintiff, an employee of the independent contractor, was injured when the trench collapsed. The North Dakota Supreme Court affirmed the action of the trial court in granting a summary judg-

---

1. See 34 A.L.R.4th 914, 929, § 4c (Employer liability—contractor's employees—excavation work). See also 33 A.L.R.2d 7 (Independent contractor rule as applicable to injury or death of third person as result of excavation and refill work).

ment in favor of the employer. The court held that the trenching did not "carr[y] a largely intrinsic risk or danger to workers when done in an ordinary and reasonable manner." *Peterson*, at 554. The court said that the risk to the injured plaintiff "was not inherent in or peculiar to the typical excavation of a trench but arises out of the failure to use proper protective practices. This type of excavation, when done with standard precautions, presents no extraordinary risk of caving in." *Id.* The court also said that in the context of a trenching project, guarding against the danger of cave-in would appear to be one of the "operative details of the work which ordinarily may be expected to be carried out with proper care."

In *Kemp v. Bechtel Const. Co.*, supra, a four-to-three opinion, the majority quoted extensively from *Peterson* and agreed with its holding. The three dissenting judges felt that it was a factual question whether the particular work was inherently dangerous under the circumstances and that summary judgment was inappropriate.

In *Balagna* the trial court entered summary judgment in favor of the employer and the Supreme Court of Kansas affirmed that ruling. The court said that the "inherently dangerous activity" doctrine set forth in § 427 of the Restatement (Second) of Torts (1965), did not apply and the same was true of the "peculiar risk" doctrine contained in § 416 of the Restatement. At 668 P.2d 168 the court said:

"The digging of trenches is work performed every day under many types of construction contracts. Where proper precautions are taken, injuries should not result to workmen from the caving in of the sides of the trench. In our judgment, injuries from the caving in of ditches because of lack of shoring is the direct result of the negligence of the contractor in the performance of the excavation work."

The court also said at 168:

"In *Smith v. Inter–Cty. Telephone Co.*, 559 S.W.2d 518 (Mo.1977), the Mis-

souri Supreme Court in a similar case reached the opposite conclusion, holding that the issue of whether trenching was an inherently dangerous activity was a fact question to be presented to the jury and that the jury could properly find that the landowner should have ensured that the trenches were shored during excavation operations."

In *Smith v. Inter–Cty. Telephone Co.*, supra, the leading Missouri case dealing with the "inherently dangerous" doctrine, the defendant telephone company employed an independent contractor to lay telephone cables. Plaintiff, an employee of the independent contractor, was injured by the cave-in of the trench in which the cables were being laid. Plaintiff obtained a verdict against the telephone company and it appealed. Because there was error in plaintiff's verdict-director, the case was remanded for new trial against the telephone company. The supreme court held, however, that the evidence adduced by plaintiff "was clearly sufficient to present a factual question as to each element of the inherent danger theory." *Smith*, at 524[6].

In *Smith*, plaintiff was working in the trench at a point where it was somewhere between 6 and 12 feet deep. The trench walls were vertical and were not braced or shored. Plaintiff offered in evidence a chapter on "Excavation and Shoring," from the "Manual of Accident Prevention in Construction" of the Associated General Contractors of America. That manual was incorporated by reference in the contract between the telephone company and the independent contractor. The manual stated, "Trenching operations are common to many types of construction and maintenance projects and are inherently dangerous. Due to great exposure, numerous accidents in connection with trenching occur every year...." The manual also listed certain precautions to be taken to eliminate most of the risk. One precaution was, "Shoring and/or bracing should be placed in every trench over four feet in depth, regardless of soil type, except solid rock,

unless banks are sloped to the [recommended angle of repose]." There was also expert testimony that a trench 6 to 12 feet deep which has vertical dirt walls with no shoring or bracing is by its very nature dangerous to persons working in that trench.

The court pointed out, at p. 525, fn. 2, that there is no MAI instruction which embodies the theory of recovery under the inherent danger exception. At 522 the court quoted with approval the following language from a prior decision:

" 'The authorities generally hold that when the work to be done is inherently or intrinsically dangerous, and the danger arises from the doing of the work and requires preventive care to bring about safety, then the employer is liable notwithstanding the persons employed are independent contractors. The distinction seems to be that if the doing of the work necessarily causes dangers which must be guarded against, then the employer must see to it that such dangers are guarded against, and cannot relieve himself by casting this duty on an independent contractor. If, however, the work is dangerous only by reason of negligence in doing it, then the liability falls only on the independent contractor. In the one case the doing of the work creates danger and requires active care to counteract the danger. In the other there is no danger unless created by negligence. The one starts with danger and requires preventive care to make safety, while the other starts with safety and requires negligence to make danger. * * * , "

The court also said, at 523:

"To make a submissible case under this exception, our cases have established that the plaintiff must present evidence that: (1) performance of the contract necessarily involves some inherently dangerous activity; (2) the activity which caused the damage was reasonably necessary to the performance of the contract and was inherently dangerous; (3)

the one contracting with the independent contractor negligently failed to insure that adequate precautions were taken to avoid damage by reason of the inherently dangerous activity; and (4) plaintiff's damage was a direct result of such negligence. Inherently dangerous activity is that which necessarily presents a substantial risk of damage unless adequate precautions are taken."

Rawlings' brief states: "Respondents (sic) concede for purposes of this appeal that the first and third elements of the Smith requirements are met." The conceded elements, enumerated above, are: (1) performance of the Rawlings–Benson contract necessarily involved some inherently dangerous activity and (3) Rawlings negligently failed to insure that adequate precautions were taken to avoid damage by reason of the inherently dangerous activity. Rawlings argues that element (2), as set out in *Smith*, is not met. That element is "(2) the activity which caused the damage was reasonably necessary to the performance of the contract and was inherently dangerous."

Rawlings states: "Floyd's injuries were the result of the negligence of Benson in operating the backhoe. Floyd's injuries did not result from the risk of collapse of the trench which is the inherent and peculiar danger of a trenching operation. Instead he was injured because of the active negligence of Benson in operating the backhoe while he was within its vicinity and in allowing the backhoe to run while he was not on board...."

Rawlings' argument is that although Benson's trenching method may have been an inherently dangerous activity because it lacked standard precautions such as shoring, the sole danger to have been averted by taking such precautions was the danger of cave-in. Floyd's injury, Rawlings argues, was not occasioned by cave-in but by Benson's negligent operation of the backhoe. That negligence, says Rawlings, was "collateral negligence."

In advancing its "collateral negligence" argument, Rawlings places its primary re-

liance upon *Hofstetter v. Union Electric Co.*, supra. In *Hofstetter* the plaintiff was an employee of an independent contractor who was hired by an electric company to operate a crane on a construction project. The independent contractor was in the process of converting the crane from a "crawler" type to a "ringer" type. Plaintiff was injured when his foot slipped while stepping off the crane from a platform about five feet above the ground. There were no steps in place for easy access to the platform.

In holding that the electric company was not liable to plaintiff under the inherently dangerous doctrine, the court of appeals said that not every act associated with the erection of the crane was an inherently dangerous activity even though erecting the crane itself might be such. The failure of the independent contractor to provide the steps was held to be collateral negligence, consisting solely of the improper manner in which it did the work and a failure to follow rudimentary safety standards. This collateral negligence gave rise to a new risk, one not anticipated by the electric company.

The court, in *Hofstetter*, said at 530:

"The theory of liability for an inherently dangerous activity is not applicable where the negligence of the independent contractor creates a new risk, not intrinsic in the work itself, which could have been prevented by routine precautions of a kind which any careful contractor would be expected to take. See Restatement (Second) of Torts § 413 comment b and § 427 comment d (1965). An employer of an independent contractor is not liable for the 'collateral negligence' of that contractor, meaning that negligence which is unusual or foreign to the normal or contemplated risks of doing the work. Restatement (Second) of Torts § 426 comment a (1965); see e.g. Restatement (Second) of Torts § 427 comment d, illustrations 1 and 2 (1965)."

The so-called doctrine of "collateral negligence" has been termed "a source of some puzzlement, perplexity, and bewilderment" and a theory of nonliability which is easier to state in the abstract than to apply. The American Law of Torts, Speiser–Krause–Gans, Vol. I, § 4:44, 721–723 (1983). With exceptions not applicable here, the Restatement of Torts (Second), § 426, defines the "collateral negligence" doctrine as follows:

"[A]n employer of an independent contractor, *unless he is himself negligent*, is not liable for physical harm caused by any negligence of the contractor if

(a) the contractor's negligence consists solely in the improper manner in which he does the work, and

(b) *it creates a risk of such harm which is not inherent in or normal to the work*, and

(c) the employer had no reason to contemplate the contractor's negligence when the contract was made."

(Emphasis added.)

█ For the reasons which follow, this court holds· that a genuine issue of fact exists with regard to element (b). If the element does not exist, Rawlings is not entitled to the benefit of the "collateral negligence" doctrine and it is unnecessary to consider Floyd's argument, advanced alternatively, that Rawlings was itself negligent as alleged in Count III.

In making its argument that the negligence of Benson was collateral negligence Rawlings points to Benson's negligence in causing the backhoe to swing. However, Benson was also negligent, or at least so a jury could find, in failing to shore the trench. Although Floyd's injury may have been the direct and immediate result of Benson's negligence in causing the backhoe to swing, can it properly be said that *as a matter of law* there was no causal connection between Floyd's injury and Benson's earlier negligence in failing to shore the trench? Are Benson's two forms of negligent conduct so divorced from each other as to be mutually independent so that the result of one is not as a matter of law attributable to the other?

If Benson had shored the trench for its entire length prior to the installation of any pipe by Floyd, there would have been no reason for the backhoe to remain in the vicinity during the pipe-laying phase of the work. At the time of the incident Floyd was in the trench engaged in installing the sewer pipe. He was reaching for additional pipe when the nearby backhoe, with its engine idling, was negligently activated by Benson. The resultant swinging of the backhoe caused the injury. The publication of the National Safety Council listed "being struck by moving equipment" as one of the hazards of trench excavation. Rawlings' argument, in essence, is that *as a matter of law* there was no causal connection between the lack of shoring and the negligent movement of the backhoe.

Although it is true that causal connection must be proved by evidence as a fact and not left to mere speculation, it is also true that direct proof of the fact of causal connection is not required. It is sufficient that the facts proved are of such nature and are so connected and related to each other that the conclusion of the existence of causal connection may be fairly inferred. *Watt v. St. Louis Public Service Co.*, 354 S.W.2d 889, 891[2] (Mo.1962). The precise injury complained of need not have been foreseen if, in fact, injury was the natural and probable consequence of Benson's negligence, *Craddock v. Greenberg Mercantile, Inc.*, 297 S.W.2d 541, 547[2] (Mo.1957), and if Rawlings is answerable for that negligence by reason of the inherently dangerous doctrine. The question of proximate cause is usually one for the jury. *Curtis v. Fruin–Colnon Contracting Co.*, 363 Mo. 676, 253 S.W.2d 158, 161[3] (1952).

The record shows that genuine issues of fact exist as to whether Benson's method of trenching was an inherently dangerous activity, whether the risk of being struck by a moving backhoe was a risk which was normal to or inherent in trench excavation and whether Benson's negligence in failing to shore the trench created the risk of Floyd's being struck by the moving backhoe.

This court holds that Rawlings has not shown by unassailable proof that it is entitled to judgment as a matter of law, that Rawlings has failed to demonstrate that no genuine issue of material fact exists, and that Rawlings was not entitled to summary judgment.

The judgment is reversed and the cause remanded.

PREWITT, P.J., and HOGAN and MAUS, JJ., concur.