[L.A. No. 30838. Mar. 8, 1979.]

GEORGE C. GRIESEL, Plaintiff and Appellant, v.
DART INDUSTRIES, INC., et al., Defendants and Respondents.

COUNSEL

Hews, Munoz & Robinson, Gregory Munoz, Ellis J. Horvitz and Edward J. Horowitz for Plaintiff and Appellant.

Borton, Petrini & Conron, Warren C. Wetterroth and James R. Parker, Jr., for Defendants and Respondents.

OPINION

MANUEL, J.—Plaintiff George C. Griesel appeals from a judgment entered on a verdict for defendants Dart Industries, Inc. and Lakeworld, a division of Dart Industries, Inc. (hereinafter referred to as Dart) in an action for damages for personal injuries.[1]

Plaintiff contends that the court erred in substituting an alternate juror after seven days of deliberation and in improperly instructing thereon. He also contends that certain instructions were erroneous and that the trial court erred in invoking Labor Code section 6304.5 to exclude evidence of safety order violations and to refuse to instruct on the effect of safety order violations.

Dart was the owner, developer and general contractor of a large residential development in Kern County. Dart contracted with F.T. Ziebarth Company, plaintiff's employer, to construct a waste water treatment plant which included an underground pump station and a pipeline between the pump station and a holding pond. The work required the excavation of a trench for the pipeline and a square cubicle for the underground pump station. The pipeline trench was to be 20 to 24 feet long of increasing depth to slightly over 9 feet and was to connect with the pump station excavation which was to be about 9 feet deep and 10 or 12 feet square. Dart exercised no control over how the work was to be done but employed a project superintendent, Burley Sizemore, to inspect the work for conformance to the plans and specifications.

---

[1]Plaintiff also filed a notice of appeal from a judgment of nonsuit for defendants County of Kern and Bear Valley Springs Community Service District. Since plaintiff confines his arguments on appeal to issues involving the jury verdict in favor of Dart, we treat the appeal from the judgment of nonsuit as having been abandoned. (See 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 425, pp. 4391-4392.)

Plaintiff had worked for Ziebarth as a laborer for three to four months at the time he was sent to work on this project. Ziebarth hired a backhoe operator to do the excavation work which began the afternoon of April 25, 1972. That afternoon Ziebarth's superintendent, Charles Bennett, instructed plaintiff to assist the backhoe operator by watching for obstacles. Plaintiff entered the trench a number of times that afternoon to assist the backhoe operator in removing rocks. Bennett, however, saw plaintiff in the trench only once that afternoon when it was still quite shallow.

Burley Sizemore went by the site about 6 p.m. on April 25 after work had stopped for the day and everyone else had gone. Sizemore noticed that the trench had been excavated and was about eight or nine feet at its deepest point. He also noticed that the trench was neither sloped nor shored. He did not recall noticing whether the bottom of the trench had been smoothed over with hand tools. At the time Sizemore saw the trench he considered it unsafe for anyone to be working in it. Sizemore and others testified that customary safety practices called for the shoring or sloping of trenches five feet or more deep in order to avoid the danger of the sides caving in.

On the morning of April 26 plaintiff went into the trench to check the grade of its floor. Bennett had told him to check the grade but had not shown him how to do so without going into the trench. Plaintiff did not know at the time that it was possible to check the grade from the top of the trench and had not been instructed about the danger of the unshored trench or told to stay out of it. Neither Bennett nor the backhoe operator saw plaintiff enter the trench. While he was in the unshored trench, it caved in upon him, inflicting serious injuries.

Although there was some conflict as to how nearly completed the excavation was at the time of the accident, in the normal course of work of this type no one would have entered the trench at the time plaintiff did so. Ordinarily, workmen would not enter the trench until the backhoe excavation was completed and it was time to pour concrete and lay pipe in the trench, at which time it would have been shored against cave-ins.

Plaintiff relied on two theories to establish Dart's liability. The first theory was Dart's duty as an owner or possessor of land to warn others of dangers of unreasonable risk of harm present on the land. The second theory was Dart's duty as an employer of an independent contractor to

assure that precautions are taken against any peculiar risk of physical harm likely to arise during the course of the contractor's work.

The jury deliberated for seven days. On the seventh day, one of the jurors advised the court that she had become too emotionally disturbed as a result of the deliberations to continue. The court informed counsel, interviewed the juror privately in chambers and then ordered her discharged. Plaintiff moved for a mistrial on the ground that the jury had deliberated too long for an alternate juror to become a meaningful and deliberative member of the jury. The court denied the motion and replaced the juror with an alternate.[2] After a little less than four hours of further deliberations the jury returned a nine-to-three verdict for defendant Dart. The recently seated alternate was one of the nine who returned the defense verdict.

I.

Plaintiff contends that the court erred in instructing the jury to "continue with your efforts" and to "continue your consideration of the case" at the time the alternate was substituted for the discharged juror.[3] Plaintiff urges that the court instead should have instructed the jury to begin deliberations anew.[4] In *People* v. *Collins* (1976) 17 Cal.3d 687 [131

[2]Plaintiff contends that the court erred in denying his motion for a mistrial on the ground that it could not have been reasonably expected that any alternate juror could become a meaningful and deliberative member of the jury after the other 11 jurors had deliberated for 7 days. This contention is answered in *People* v. *Collins* (1976) 17 Cal.3d 687, 693 [131 Cal.Rptr. 782, 552 P.2d 742], where we rejected the argument that a mistrial must be declared when a juror is dismissed for good cause and an alternate is to be substituted after deliberations have begun.

[3]The court instructed the jury as follows:

"THE COURT: Now Court and counsel and most all of the rest of you are cognizant of the fact that this was a long case, a lot of problems, and it's been a long time at it. And we all have work to do, not only you people, but counsel and myself.

"Considering all the factors that there are, including the finances involved to you and the Court and to counsel, and all of the factors that could be considered—I can't name them all. You can think of a lot more than I have mentioned here—we don't let the expenses of the County be the important matter, or anything of that sort. *We want you to continue with your efforts,* but we would like to have a report at 4:00 o'clock this afternoon or just before 4:00 as to whether you think that there is a chance of getting together as a result of further consideration of the case if you have not arrived at a determination by that time.

"So will the foreman please, if you're still continuing with your efforts, say about a quarter of 4:00, or shortly before that, get the thinking of the respective jurors on that subject so that you may report for them at that time.

"Thank you. And you will now be returned to the jury box, jury room, and *continue your consideration of the case.* And the last man will, of course, be guided by the same rules he has in the past." (Italics added.)

[4]Plaintiff's failure to request this instruction does not bar him from asserting error in the instruction that was given. Section 647 of the Code of Civil Procedure expressly

Cal.Rptr. 782, 552 P.2d 742], we considered the question whether a statute authorizing the substitution of an alternate juror after commencement of deliberations infringes upon the constitutional right to a jury trial set forth in article I, section 16 of the California Constitution. We concluded that it does not so long as the statute is construed to require that the court instruct the jury to set aside and disregard all past deliberations and begin deliberating anew. (*Id.,* at p. 694.) This construction was necessary to protect the right to have each juror engage in all of the jury's deliberations, an essential element of the right to a jury trial. We reasoned that "The requirement that 12 persons reach a unanimous verdict is not met unless those 12 reach their consensus through deliberations which are the common experience of all of them. It is not enough that 12 jurors reach a unanimous verdict if 1 juror has not had the benefit of the deliberations of the other 11. Deliberations provide the jury with the opportunity to review the evidence in light of the perception and memory of each member. Equally important in shaping a member's viewpoint are the personal reactions and interactions as any individual juror attempts to persuade others to accept his or her viewpoint. The result is a balance easily upset if a new juror enters the decision-making process after the 11 others have commenced deliberations." (*Id.,* at p. 693.)

We agree with plaintiff that the principles set forth in *Collins* apply to civil as well as criminal cases. The right to a jury trial in civil cases is also guaranteed by article I, section 16 of the California Constitution,[5] and the provisions of the statute governing the substitution of jurors in civil cases (Code Civ. Proc., § 605) are the same as the ones governing criminal cases (Pen. Code, § 1089). The same considerations require that each juror engage in all of the jury's deliberations in both criminal and civil cases. The requirement that at least nine persons reach a verdict is not met unless those nine reach their consensus through deliberations which are the common experience of all of them. Accordingly, we construe section 605 of the Code of Civil Procedure to require that the court

provides that the giving of an instruction is deemed excepted to. (See *Rivera* v. *Parma* (1960) 54 Cal.2d 313, 316 [5 Cal.Rptr. 665, 353 P.2d 273]; *Cook* v. *Los Angeles Ry. Corp.* (1939) 13 Cal.2d 591, 593-594 [91 P.2d 118].)

[5]Article I, section 16 provides in pertinent part: "Trial by jury is an inviolate right and shall be secured to all, but in a civil cause three-fourths of the jury may render a verdict. . . ."

We are not here concerned with the federal constitutional guarantee of trial by jury in civil cases since it has never been held applicable to state proceedings and in any event is satisfied by a jury of six. (See *Colgrove* v. *Battin* (1973) 413 U.S. 149 [37 L.Ed.2d 522, 93 S.Ct. 2448].)

instruct the jury to disregard all past deliberations and begin deliberating anew when an alternate juror is substituted after jury deliberations have begun. (See *People* v. *Collins, supra*, 17 Cal.3d at p. 694.)

It therefore follows that the trial court erred in instructing the jury to continue with their efforts at the time the alternate was seated. It also appears that this error requires reversal. Our review of the evidence and the length of the jury's deliberations indicate that the case was a close one. Moreover, the alternate juror was one of the nine necessary to return the verdict. Given the closeness of the case, the composition of the nine jurors returning the verdict and the comparison of time spent deliberating before and after the substitution of the alternate juror, we conclude that this error was prejudicial. (See *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]; *People* v. *Collins, supra*, 17 Cal.3d at p. 697; art. VI, § 13, Cal. Const.)[6]

For guidance in the event of a retrial we will address certain of plaintiff's other contentions.

## II.

Plaintiff contends that the court erred in the giving of certain instructions on the peculiar risk doctrine. The applicable law on the peculiar risk doctrine is stated in sections 413 and 416 of the Restatement Second of Torts. (See *Woolen* v. *Aerojet General Corp.* (1962) 57 Cal.2d 407 [20 Cal.Rptr. 12, 369 P.2d 708]; *Ferrel* v. *Safway Steel Scaffolds* (1962) 57 Cal.2d 651 [21 Cal.Rptr. 575, 371 P.2d 311]; *Van Arsdale* v. *Hollinger* (1968) 68 Cal.2d 245 [66 Cal.Rptr. 20, 437 P.2d 508].) Section 416 states that "One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise." Section 413 differs from section 416 only to the extent that it imposes direct liability on the employer

---

[6]As we explained in *Collins*, "[w]hen as here the error is not of federal constitutional dimensions and does not fall within certain exceptions not here applicable, we are committed to the prejudicial error rule enunciated in *People* v. *Watson, supra*, 46 Cal.2d 818, without regard to whether the error offends fundamental as compared to other rights. (*Id.*, at p. 835.)" (17 Cal.3d at p. 697, fn. 5.)

when he has made no provision in the contract or otherwise for the taking of required precautions. (See Rest.2d Torts, § 416, com. c.)

A peculiar risk is a risk which is peculiar to the work to be done and arises out of its character or the place where it is to be done, and against which a reasonable person would recognize the necessity of taking special precautions. (Rest.2d Torts, §§ 413, com. b., 416 com. b.) It is something other than the ordinary and customary dangers which may arise in the course of the work or of normal human activity. " 'Peculiar' does not mean that the risk must be one which is abnormal to the type of work done, or that it must be an abnormally great risk. It has reference only to a special, recognizable danger arising out of the work itself." (Rest.2d Torts, § 413, com. b.) "It is not essential that the peculiar risk be one which will necessarily and inevitably arise in the course of the work, no matter how it is done. It is sufficient that it is a risk which the employer should recognize as likely to arise in the course of the ordinary and usual method of doing the work, or the particular method which the employer knows that the contractor will adopt." (Rest.2d Torts, § 416, com. e.)

A number of risks have been found to be peculiar to the activity involved. They include the risk of being struck by an automobile while eradicating traffic lines on a busy street (*Van Arsdale* v. *Hollinger, supra,* 68 Cal.2d at p. 254), the risk of being run over by dump trucks backing up during road construction work (*Anderson* v. *L. C. Smith Constr. Co.* (1969) 276 Cal.App.2d 436, 445-446 [81 Cal.Rptr. 73]), the risk of explosion while painting the inside of a tank with a volatile paint (*Woolen* v. *Aerojet General Corp., supra,* 57 Cal.2d at p. 410; *McDonald* v. *City of Oakland* (1965) 233 Cal.App.2d 672, 677-678 [43 Cal.Rptr. 799]), the risk of falling while working on a 10-foot high wall (*Morehouse* v. *Taubman* (1970) 5 Cal.App.3d 548, 557-558 [85 Cal.Rptr. 308]), or on a 20-foot high bridge (*Fonseca* v. *County of Orange* (1972) 28 Cal.App.3d 361, 365-366 [104 Cal.Rptr. 566]), the risk of electrocution while operating a crane near high voltage wires during bridge construction work (*Walker* v. *Capistrano Saddle Club* (1970) 12 Cal.App.3d 894, 900 [90 Cal.Rptr. 912]), and the risk of a cave-in while working in a 14-foot deep trench (*Widman* v. *Rossmoor Sanitation, Inc.* (1971) 19 Cal.App.3d 734, 744-747 [97 Cal.Rptr. 52]).

█ It is clear from the foregoing that the court erred in instructing the jury on its own motion that "Trenching is an ordinary and customary danger of construction work, and trenching in and of itself is not a 'peculiar risk' under the instructions as I have given them to you. [¶] You

may determine under all of the circumstances known or which should be known to reasonably prudent land developers, and the facts as known or should have been known to an ordinary prudent licensed sewer contractor, whether the combination of all facts constituted a 'peculiar risk' as defined by the Court."

The reference to trenching being an ordinary and customary danger of construction work was erroneous and contradictory to other instructions given on the definition of a peculiar risk such as the general statement of the doctrine in BAJI No. 13.21.[7] The fact that an activity involves an ordinary and customary danger of the particular work to be performed is immaterial to the question of whether it may involve a peculiar risk of harm within the meaning of the peculiar risk doctrine. (See Rest.2d Torts, § 413, com. b.) The evidence in this case clearly indicated that in the absence of special precautions the trenching work to be done by Ziebarth involved a peculiar risk of physical harm. It required workers to enter a trench that was nine feet deep to pour concrete and lay pipe. In the absence of adequate shoring or sloping such work involved a risk of serious harm to the workers that the trench might cave in on them. The key point of dispute in this case was whether Dart recognized or should have recognized a likelihood that someone might enter the trench prior to the time that the piping and concrete work was to be done. The question was not therefore whether the trenching work involved a peculiar risk in the abstract but whether it involved a peculiar risk at the time that plaintiff was injured. Rather than focusing on that issue the quoted instruction at least strongly suggested to the jury that a cave-in would not be a peculiar risk because "Trenching is an ordinary and customary danger of construction work." Instead the jury should have been clearly instructed that a cave-in would be a peculiar risk of the work if the jury found that Dart should have recognized that anyone might enter the trench before it was properly shored or sloped.

■ The instructions on plaintiff's other theory of liability were also confusing. Based on the evidence of Sizemore's observation of the trench the night before the accident, plaintiff sought instructions on Dart's duty

[7]The court gave BAJI No. 13.21 (1974 rev.) as follows: "And ordinarily, one who employs an independent contractor is not liable for the acts or omissions of such contractor or its employees. However, one who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of bodily harm to others unless special precautions are taken, is subject to liability for physical harm proximately caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise."

of care as a landowner to protect him from a dangerous condition of the premises. (See *Kuntz* v. *Del E. Webb Constr. Co.* (1961) 57 Cal.2d 100, 104-105 [18 Cal.Rptr. 527, 368 P.2d 127]; *Souza* v. *Pratico* (1966) 245 Cal.App.2d 651, 656-657 [54 Cal.Rptr. 159]; *Rowland* v. *Christian* (1968) 69 Cal.2d 108, 119 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496].) The court refused plaintiff's request for a general instruction regarding the duty of care under this theory (BAJI No. 8.00) but nevertheless gave two instructions elucidating particular facets of and limitations on such a duty of care (BAJI Nos. 8.01 [defining unreasonable risk of harm] and 8.20 [owner's knowledge of dangerous condition generally required for liability]). We agree with plaintiff that it was error to refuse to give the general instruction (see *Kuntz* v. *Del E. Webb Constr. Co., supra,* 57 Cal.2d at pp. 104-107) and that without it the jury must necessarily have been confused as to the precise theories of liability relied on by plaintiff.

## III

Plaintiff also contends that Labor Code section 6304.5 is unconstitutional and that the court therefore erred in relying on it to exclude evidence of safety order violations and to refuse to instruct that the violation of safety orders constitutes negligence per se.[8] Plaintiff argues that section 6304.5 violates the equal protection provisions of the state and federal Constitutions by arbitrarily and unreasonably creating a class of employee-plaintiffs who are denied the benefit of the negligence per se doctrine, that section 6304.5 violates article IV, section 9 of the California Constitution which requires that a statute embrace but one subject expressed in its title, and that section 6304.5 was enacted in violation of rule 9 of the Joint Rules of the Legislature which requires that a substitute or amendment relate to the same subject as the original bill. These arguments were made and correctly rejected in *Spencer* v. *G.A. MacDonald Constr. Co.* (1976) 63 Cal.App.3d 836 [134 Cal.Rptr. 78], which held that section 6304.5 is constitutional.

---

[8]Section 6304.5, which became operative on April 1, 1972 (25 days before plaintiff's injury), provides: "It is the intent of the Legislature that the provisions of this division shall only be applicable to proceedings against employers brought pursuant to the provisions of Chapter 3 (commencing with Section 6500) and 4 (commencing with Section 6600) of Part 1 of this division for the exclusive purpose of maintaining and enforcing employee safety. [¶] Neither this division [division 5, entitled 'Safety in Employment'] nor any part of this division shall have any application to, nor be considered in, nor be admissible into, evidence in any personal injury or wrongful death action arising after the operative date of this section, except as between an employee and his own employer."

The judgment for Dart is reversed. The appeal from the judgment of nonsuit for County of Kern and Bear Valley Springs Community Service District is deemed abandoned and accordingly is dismissed. (See fn. 1, *ante.*)

Bird, C. J., Tobriner, J., Mosk, J., Clark, J., Richardson, J., and Newman, J., concurred.