[No. B027710. Second Dist., Div. Seven. Dec. 16, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
DEREK RENE AIKENS, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

No. BO36550

In re Aikens on Habeas Corpus.

---

\* Pursuant to rules 976 and 976.1 of the California Rules of Court, the introductory paragraph, the Factual Synopsis, contention 1 of the Discussion and the concurring and dissenting opinion are certified for publication.

**COUNSEL**

James R. McGrath, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Carol Wendelin Pollack and Patrick T. Brooks, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**WOODS, (Fred), J.**—Defendant was convicted on two counts of assault with a deadly weapon. Defendant has presented this court with a list of 12 claims of error on this appeal. We find no merit to any of the claims of error and affirm the judgment.[1]

---

[1] Appellant has also filed a petiiton for writ of habeas corpus (*In re Derek Rene Aikens,* B036550) which has been considered in this appeal. A separate order will be filed in that matter.

. . . . . . . . . . . . . . . . . . . .*

## FACTUAL SYNOPSIS

An extensive treatment of the evidence is not necessary since appellant does not contest the sufficiency of the evidence. Suffice it to state that appellant was convicted as a result of a "baseball bat attack" on victims, Leonard Clark and Patricia Clark, "resulting in bodily injuries to both victims."

## DISCUSSION

1.

*The Trial Court Did Not Commit Reversible Error in Substituting a Juror After a Verdict Had Been Reached on One of the Two Charged Counts.*

■■■ It is appellant's position that, regardless of the number of potential verdicts, once a jury arrives at *a* verdict the court may not excuse a juror, insert an alternate, and allow the reconstituted jury to deliberate regarding other verdicts.

The logical extension of this position would be to require an automatic mistrial even if a juror should die or become incapacitated and even if 10 fully qualified alternate jurors were available for substitution. However, this "mechanistic" approach appears not to be consonant with Penal Code section 1089 which states: "*If at any time,* whether before or after the final submission of the case to the jury, . . . the court may order him to be discharged and draw the name of an alternate . . . ." (Italics added.) We note from the legislative history that the language "[i]f at any time, whether before or after . . ." was added by the legislature in 1933. There appears to be a clear legislative intent that alternate jurors may be substituted "at any time," including, arguendo, the eventuality where one or more but not all verdicts have yet been reached. At least this consequence has not been excluded by case law or by statute according to our search of existing authorities.

Despite the absence of appellate decisions, one would have expected that in the last 55 years there would have been many instances of such substitutions reported in the case law. Such does not appear to be the case. In

---

*See footnote, *ante,* page 209.

*People* v. *Collins* (1976) 17 Cal.3d 687 [131 Cal.Rptr. 782, 552 P.2d 742] the court held that it is constitutional (both United States and California) to substitute jurors after deliberations have begun. *Collins* also holds that when a juror substitution occurs after deliberations have begun the jury must be instructed to begin deliberations *anew*, not resume them. (*Id.*, at p. 694.) ■ It is error to fail to give such an instruction. Although no such instruction was given in *Collins* that error was judged by the *Watson*[2] standard and the error in *Collins* was found to be harmless. In *Collins* the court said: "We are confident that juries made aware of the rights involved will faithfully follow such instructions." (*Ibid.*) There is no intimation in *Collins* that the holding was restricted to preverdict deliberations despite the fact that the defendant was charged with three counts.[3]

In the instant case the trial court gave the very instruction *Collins* required. Using essentially the language of CALJIC No. 17.51 the jury was instructed by the trial judge at the time of juror substitution as follows:

"Ladies and Gentlemen, one of your number has been excused for legal cause and replaced with an alternate juror. [¶] You have observed, of course, why that is so and need not speculate on the reasons for that excuse. [¶] The People and the defendant have a right to a verdict reached only after full participation of the 12 jurors who ultimately return a verdict. This right may be assured in this case only if the jury begins its deliberations again from the beginning. [¶] You are therefore instructed to set aside and disregard all past deliberations as to count 2 and begin those deliberations anew. This must deem that each remaining original juror must set aside and disregard the earlier deliberations as if they had not taken place. [¶] Does anyone missunderstand [*sic*] that?"

■ In this uncomplicated case where the prosecution's case-in-chief took about one day and the defense a little longer, what is there to indicate that the reconstituted jury did not follow the court's instruction in its deliberation on count II? It would be a quantum leap to find reversible error in the face of the giving of this instruction by the trial court.

[2] The *Watson* standard is that before a reversal is required it must be "reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

[3] More recently the California Supreme Court has stated, "[w]e recognize that unforeseen circumstances may require substitution of a juror at the penalty phase of a capital trial, even though the alternate did not take part in the guilt phase deliberations. (See *People* v. *Green* (1971) 15 Cal.App.3d 524, 528-529 [93 Cal.Rptr. 84].) But in view of the discussion in *People* v. *Collins, supra,* 17 Cal.3d 687, we should not adopt a policy which contemplates substitution of alternate jurors after the guilt trial as a routine procedure." (*People* v. *Fields* (1983) 35 Cal.3d 329, 351, fn. 9 [197 Cal.Rptr. 803, 673 P.2d 680].)

We are cognizant of the fact that the New Jersey Supreme Court has held in *State* v. *Corsaro* (1987) 107 N.J. 339 [526 A.2d 1046] to the contrary, but a careful reading of *Corsaro* leaves one with the distinct impression that the decision is superficial, unpersuasive and too mechanistic. The opinion fails to reveal that the court weighed important conflicting interests and addressed the realities of jury dynamics. Instead, a "formulistic" approach is taken by that court.

Other considerations which lead us to our decision are as follows: This is not a close case on the facts. Both victims positively identified the defendant. The only issue in the case is identification, not self defense, or other possible defenses. Additionally, an independent witness who was within a few feet of the defendant also positively identified the defendant. Although the evidence reveals that the fight took place at night, witnesses testified that there were nearby street lights. Appellant asserts that victim Clark contradicted his identification of appellant by his other testimony that he was *told* it was appellant who struck him. But this contradiction was more semantic than real, as the trial court's question revealed: "[s]o, are you saying that you saw this man hit you that night and your sister told you his name later?

"Witness: Yes."

Appellant argues that the two counts are so inextricably intertwined that the new juror could not be a full participant in the deliberations on count II deliberations and that the guilty verdict on the first count returned by the original jury ordained a guilty verdict on the second count by the reconstituted jury. A logical extension of this position cries out for a response to the question "then what was the defendant's prospects on count II if the original jury had continued with the deliberations?"

If excusing a postverdict juror, regardless of hardship, would cause a mistrial as to all other charges, trial courts would resist excusing such jurors. Here, the excused juror's state of mind is revealed the transcript as follows:

"The Court: People versus Aikens. . . .

"We're back to our problem of whether to relieve Mr. Esposito. Mr. Esposito, do you want to make it half a day at work, is that it?

"Juror Esposito: Yeah. I mean, I can't afford not to be paid. That's what it comes down to for me.

"The Court: That's going to create a big hardship for you, you think?

"Juror Esposito: Well, I know it will."

Had Mr. Esposito been required to resume deliberations it is unlikely that he or his empathic fellow jurors would have unhurriedly and dispassionately weighed and considered the remaining charge. A rush to judgment seems more likely.

In these circumstances it would have been an abuse of discretion for the trial judge not to have excused juror Esposito from the jury at that time in face of his declared state of mind.

■ In exercising its discretion concerning juror substitution the trial court should give paramount consideration to the constitutional rights of the accused, but weight should also be given to the state's interest and the consequence which might flow therefrom if a mistrial is granted causing the prolongation of criminal proceedings. For example, suppose after a lengthy two-year trial a jury arrived at a verdict on a particular count and then a juror became disabled, leaving the other multiple counts not yet decided. Must there be an "automatic" mistrial, even though qualified alternate jurors are available? We think not, for the following reasons:

• The traumatic effect on victims who must be ground through the trial process all over again may be profound;

• The expense which might accrue to the state as well as to the accused could be considerable;

• Public confidence in the justice system could be eroded; and

• The maxim of "justice delayed equals justice denied" would certainly have a relevant application in such an instance. If resolution and punishment following a proper conviction are so remote from the crime then the intended effect of deterrence would be diluted.

2.-12.*

. . . . . . . . . . . . . . . . . . .

### CONCLUSION

The judgment is affirmed.

Lillie, P. J., concurred.

---

* See footnote, *ante,* page 209.

**JOHNSON, J., Concurring and Dissenting.**—I concur in affirming the judgment as to count I and in the majority's determination on all the issues except defendant's contention it was error to substitute a new juror after the original jury had reached a verdict on count I. On that issue I dissent. I would hold that where, as here, the facts the jury necessarily found in reaching a verdict on the first count are essentially the same facts the jury must find on the second count it is error to substitute a new juror after a verdict on the first count.

Defendant raises an issue of first impression in California: whether it is proper in a criminal case to substitute a juror after a verdict on one count has been returned and allow the reconstituted jury to reach a verdict on the remaining counts.[1]

The discretion of trial courts to substitute jurors is governed by Penal Code section 1089 which provides in relevant part: "If at any time, whether *before or after the final submission of the case to the jury,* a juror dies or becomes ill, or upon other good cause shown to the court is found to be unable to perform his duty, or if a juror requests a discharge and good cause appears therefor, the court may order him to be discharged and draw the name of an alternate, who shall then take his place in the jury box, and be subject to the same rules and regulations as though he had been selected as one of the original jurors." (Italics added.)

The constitutionality of section 1089 was challenged in *People* v. *Collins* (1976) 17 Cal.3d 687, 693 [131 Cal.Rptr. 782, 552 P.2d 742] on the ground it violated a criminal defendant's right to the unanimous verdict of 12 persons as guaranteed by the California Constitution, article I, section 16. The court agreed section 1089 would be unconstitutional if construed to deny the defendant a verdict on which all the jurors had fully deliberated.

"The requirement that 12 persons reach a unanimous verdict is not met unless those 12 reach their consensus through deliberations which are the common experience of all of them. . . . [A] defendant may not be convicted except by 12 jurors who have heard all the evidence and argument and who together have deliberated to unanimity." (17 Cal.3d at p. 693.) The court held, however, "a proper construction of section 1089 requires that

---

[1] My research has disclosed two cases in which a juror was substituted after the original twelve jurors reached a guilty verdict. Neither case addressed the constitutional issue defendant raises in the case before us. In *People* v. *Green* (1971) 15 Cal.App.3d 524, 528 [93 Cal.Rptr. 84], the Court held substituting a juror to try the sanity phase of a case did not violate the provision of Penal Code section 1026 that the sanity issue be tried "either before the same jury or before a new jury." In *People* v. *Hamilton* (1963) 60 Cal.2d 105, 126 [32 Cal.Rptr. 4, 383 P.2d 412], the court found it was error to excuse a juror during the penalty phase of a murder trial because there was no "good cause" shown for excusing her.

deliberations begin anew when a substitution is made after final submission to the jury. . . . We accordingly construe section 1089 to provide that the court instruct the jury to set aside and disregard all past deliberations and begin deliberating anew." (*Id.* at p. 694.)

In *Collins* and subsequent cases the Court has emphasized the constitutionality of substituting a new juror after deliberations have commenced rests on the presumption the new juror will participate fully in the jury's deliberation. "It is not enough that 12 jurors reach a unanimous verdict if 1 juror has not had the benefit of the deliberations of the other 11. Deliberations provide the jury with the opportunity to review the evidence in light of the perception and memory of each member. Equally important in shaping a member's viewpoint are the personal reactions and interactions as any individual juror attempts to persuade others to accept his or her viewpoint. The result is a balance easily upset if a new juror enters the decision-making process after the 11 others have commenced deliberations. The elements of number and unanimity combine to form an essential element of unity in the verdict." (*People* v. *Collins, supra,* 17 Cal.3d at p. 693; see also *Griesel* v. *Dart Industries, Inc.* (1979) 23 Cal.3d 578, 583-584 [153 Cal.Rptr. 213, 591 P.2d 503]; *People* v. *Odle* (1988) 45 Cal.3d 386, 405 [247 Cal.Rptr. 137, 754 P.2d 184].) Thus, it is error to instruct the reconstituted jury to "continue your consideration of the case" or imply the new juror need only be brought " 'up to speed' on what matters have already been discussed and possibly decided." (*Griesel* v. *Dart Industries, Inc., supra,* 23 Cal.3d at p. 583, fn. 3; *People* v. *Odle, supra,* 45 Cal.3d at p 405.)[2]

Since the *Collins* decision, no California case has ruled on the situation presented here in which the original jury not only commenced deliberations but reached a verdict on a related count prior to the substitution of a new juror.

The closest case on point is *People* v. *Fields* (1983) 35 Cal.3d 329 [197 Cal.Rptr. 803, 673 P.2d 680] in which the court, in dictum, recognized the constitutional problem that would arise if an alternate joins the jury after it has reached a verdict. The defendant, in *Fields,* claimed excluding persons who would automatically vote against the death penalty from the guilt phase of his murder trial denied those persons equal protection of the law. The court rejected the equal protection claim on the ground the interest of the state in maintaining a unitary jury for both phases of the trial is

---

[2] In the case before us, the trial court instructed the jury to "set aside and disregard all past deliberations as to count 2 and begin those deliberations anew." Even assuming the instruction satisfied the requirement of *Collins* it did not address the problem in this case of separating the deliberations as to count 2 from the factual determinations by the original jury as to count 1.

sufficient to justify the exclusion of death penalty foes from the guilt phase. (*Id.* at pp. 352-353.) In explaining why the state had a legitimate interest in maintaining a unitary jury, the court pointed out a new constitutional problem would arise if jurors opposed to the death penalty were allowed to serve during the guilt phase and then replaced by alternates at the commencement of the penalty phase.

"We held in *People* v. *Collins* . . . that if necessary an alternate juror could join the jury after deliberations had begun, but that the jury must be instructed to disregard all past deliberations and begin anew. The proposal before us, however, envisions an alternate joining the jury after it had deliberated on the issues of guilt and special circumstances and reached a verdict. He would be joining a group which has already discussed and evaluated the circumstances of the crime, the capacity of the defendant, and other issues which bear both on guilt and on penalty. The resulting deliberations between old members who have already considered the evidence and may have arrived at tentative conclusions on some aspects of the case, and new members ignorant of those discussions and conclusions, would depart from the requirement that jurors 'reach their consensus through deliberations which are the common experience of all of them.'" (35 Cal.3d at p. 351, citations omitted.)

The majority ignores this language from *Fields* and, instead, quotes the footnote that follows it. (Maj. opn., *supra,* p. 212, fn. 3.) The footnote in *Fields* does not approve the substitution of an alternate juror under the facts of the case before us. As previously noted, *supra,* page 215, footnote 1, the case of *People* v. *Green,* cited in the *Fields* footnote, did not involve the situation in *Fields,* the substitution of a juror at the penalty phase of the trial, nor did it involve the situation in our case where a juror is substituted after the original jury has returned a verdict on a closely related count.

The New Jersey Supreme Court has addressed the identical issue presented in the case before us and, relying in part on *Collins,* held it was error to substitute a juror after the return of verdicts on some counts in order to reach verdicts on the remaining counts when there is a factual overlap between the counts. (*State* v. *Corsaro* (1987) 107 N.J. 339 [526 A.2d 1046].) I believe the reasoning in *Corsaro* is consistent with the reasoning in *People* v. *Collins* and that it should be followed in California.

Defendants in *State* v. *Corsaro* were tried on various gambling charges. Before the juror substitution, the original jury convicted two of the defendants of maintaining a gambling resort, one defendant of promoting gambling and defendant Corsaro of possession of gambling records. The remaining counts charged defendant Corsaro with promoting gambling and all

defendants with conspiracy to promote gambling. (526 A.2d at pp. 1047-1048.) The verdicts of the original jury bore on the remaining counts because those convictions could have established the overt act requirement for the conspiracy count and the conviction of Corsaro for possession of gambling equipment was a " 'strong, perhaps irresistible pull' toward her conviction for 'promoting gambling.' " (526 A.2d at p. 1054.)

The New Jersey statute on substitution of jurors is similar to Penal Code section 1089. It provides in relevant part, "[I]f at any time after submission of the case to the jury, the juror dies or a juror is discharged by the court because he is ill or otherwise unable to continue, the court may direct the clerk to draw the name of an alternate juror to take the place of the juror who is deceased or discharged. When such a substitution of an alternate juror is made, the court shall instruct the jury to recommence deliberations and shall give the jury such other supplemental instructions as may be appropriate." (Quoted in *State* v. *Corsaro, supra,* 526 A.2d at p. 1052.) The New Jersey high court, like California's, has imposed a construction on the statute requiring " 'the jury must be instructed in clear and unequivocal terms that it is to begin its deliberations anew' " not simply pick up from where they left off before the substitution. (*Ibid.*) The trial court in *Corsaro,* like the trial court in the case before us, gave the reconstituted jury an instruction which arguably at least complied with state decisional law. It instructed the jury, "you are to begin your deliberations anew with respect to the open charges that you are considering . . . ." (*Id.* at p. 1050.)

The problem in *Corsaro* was not in the wording of the instruction. (526 A.2d at p. 1053.) The problem in *Corsaro,* as in the case at bar, was that the original jurors had gone beyond deliberations and actually announced verdicts. (*Id.* at pp. 1053-1054.) The court concluded it would be unreasonable and untenable to presume the original 11 jurors would follow an instruction to disregard the findings of fact reflected in their existing verdicts and start from scratch with the new juror. (Cf. *People* v. *Fields, supra,* 35 Cal.3d at p. 351.)

In reaching this conclusion the *Corsaro* court interpreted *People* v. *Collins* to mean a "verdict does not satisfy the constitutional requirement of unanimity if the new juror does not have the benefit of the deliberations of the original 11, is pressured to conform to the views of the original 11 and has no meaningful chance to persuade the others to accept his or her viewpoint." (*State* v. *Corsaro, supra,* 526 A.2d at pp. 1052-1053, citing *People* v. *Collins, supra,* 17 Cal.3d at p. 693.) The *Corsaro* court then explained why a verdict by a reconstituted jury, after the original jury had reached a related verdict, cannot meet the requirement of unanimity.

"[W]here the deliberative process has progressed for such a length of time or to such a degree that it is strongly inferable that the jury has made actual fact-findings or reached determinations of guilt or innocence, the new juror is likely to be confronted with closed or closing minds. In such a situation, it is unlikely that the new juror will have a fair opportunity to express his or her views and to persuade others. Similarly, the new juror may not have a realistic opportunity to understand and share completely in the deliberations that brought the other jurors to particular determinations, and may be forced to accept findings of fact upon which he or she has not fully deliberated." (526 A.2d at p. 1054.)

In the case at bar, it is reasonable to assume the original jury chose to believe the prosecution witnesses over those for the defense in convicting defendant of assault on Leonard Clark. The jury necessarily found that defendant was present at the scene while the melee was still going on and that it was he who struck Leonard Clark with a baseball bat. It necessarily disbelieved defendant's testimony he arrived at the scene after the assault on Leonard and Patricia Clark had taken place and the testimony of witnesses who stated it was defendant's sister who struck Leonard Clark with the bat.

It is entirely *unreasonable* to presume that having finalized those findings of fact in the form of a guilty verdict as to count I, the remaining 11 members of the original jury would be willing, much less able, to put those findings aside and consider the facts anew, including in their deliberation the perception, memory and viewpoint of the new juror. (See *People* v. *Collins, supra,* 17 Cal.3d at p. 693; *State* v. *Corsaro, supra,* 526 A.2d at p. 1054.) What is more, it is a virtual certainty they did not do so in the 45 minutes they deliberated on count II. While the findings of fact underlying the guilty verdict on count I did not necessarily compel a guilty verdict as to count II, they were a "strong, perhaps irresistible gravitational pull" toward such a verdict. (*State* v. *Corsaro, supra,* 526 A.2d at p. 1054.)[3]

---

[3] The majority apparently believes no prejudice to the defendant arises if the reconstituted jury finds him guilty on a related count because it is probable the original jury would have reached the same result. (See, *supra,* p. 213.) This argument entirely misses the point. What the original jury would have done is irrelevant. Defendant was not convicted on count II by the original jury. He was convicted by a different jury and as to *that* jury he had the constitutional right "not to be convicted except by 12 jurors . . . . who together have deliberated to unanimity." (*People* v. *Collins, supra,* 17 Cal.3d at p. 693.) Surely the majority does not mean to say it would have been harmless error not to impanel an alternate juror at all on the ground the verdict of the remaining 11 jurors is probably the same verdict the original 12 would have reached. Yet, this would appear to be the logical extension of the majority's argument. Regardless of the court's view about the probability of the outcome, a felony defendant cannot be compelled to accept a verdict by less than 12 jurors. (*People* v. *Ames* (1975) 52 Cal.App.3d 389, 392 [124 Cal.Rptr. 894]; cf. *People* v. *Superior Court* (1967) 67 Cal.2d 929, 932 [64 Cal.Rptr. 327, 434 P.2d 623, 25 A.L.R.3d 1143].)

I recognize dicta in *People* v. *Collins* and *Griesel* v. *Dart Industries* express our Supreme Court's view an instruction to the reconstituted jury to disregard all past deliberations and begin anew is sufficient to guarantee the defendant a unanimous verdict. (See *Collins, supra,* 17 Cal.3d at p. 694; *Griesel, supra,* 23 Cal.3d at p. 583, fn. 2.) But, in those cases the court was speaking about setting aside deliberations not *determinations*. As the *Corsaro* court correctly observed,

"The requirement that juries begin deliberations anew after a juror has been substituted would be rendered nugatory if the reconstituted jury is likely to accept, as conclusively established, facts that could underlie, if not necessarily establish, its verdict on the open charges. . . . While the jury was not technically required to accept the facts underlying the partial verdict, the likelihood that deliberations would truly 'begin anew' was so remote, in our opinion, as to foreclose juror substitution." (*State* v. *Corsaro, supra,* 526 A.2d at p. 1055.)

Submitting count II to the reconstituted jury was prejudicial to the defendant because it is reasonably probable a jury not influenced by its previous findings of fact and, perhaps, the opinions and feelings of the juror who was discharged would have returned a more favorable verdict. This was a close case on the facts. The victims were injured in a neighborhood brawl featuring a baseball bat. The fight took place at night on a dark street, the nearest street light being two blocks away. Participants on both sides had control of the bat during the melee and used it. Not surprisingly there was much conflict in the testimony of the witnesses. They not only disputed each other; they contradicted themselves as well. One of the prosecution's own witnesses testified she was "positive" defendant had not struck Patricia Clark, the victim named in count II.

I am not persuaded by the majority's in terrorem argument on the effects of adopting the view expressed in this dissent. (Maj. opn., *supra,* p. 214.) First of all, as the majority admits, the situations in which a juror is excused after the jury has reached a verdict on some counts are exceedingly rare. (See maj. opn., *supra,* p. 211.) Thus, the view I express, even if it applied to every such situation, would have an insignificant effect on the number of mistrials occurring in this state and clearly would not exacerbate the harm caused by mistrials as described by the majority. Second, I agree with the majority a mistrial should not result "automatically" every time a juror dies or is excused after the jury returns a verdict on one count. (See maj. opn., *supra,* p. 211.) I would not hold a new juror can never be substituted once the original jury has rendered a verdict on one charge. For example, a deliberation under Penal Code section 1025 to determine the truth of allegations of prior convictions would not seem to raise the problem raised in the

case before us. I would hold only that such a substitution is not permitted where, as here, there is such an overlapping of facts among the counts the facts underlying the existing verdict could also underlie, if not necessarily establish, the verdict on a remaining charge.

Accordingly, I would affirm the conviction as to count I and reverse as to count II.

A petition for a rehearing was denied January 11, 1989. Johnson, J., was of the opinion that the petition should be granted. Appellant's petition for review by the Supreme Court was denied March 29, 1989.