[No. B065728. Second Dist., Div. Seven. Jan. 25, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID SCOTT HALSEY, Defendant and Appellant.

**Counsel**

Charlotte E. Costan, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Acting Assistant Attorney General, William T. Harter and Paul M. Roadarmel, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WOODS (Fred), J.**—Charged with murder (Pen. Code, § 187; unless otherwise noted, statutory references are to the Penal Code), appellant was convicted by a jury of voluntary manslaughter (§ 192, subd. (a)) while using a firearm (§ 12022.5). He was sentenced to state prison for 10 years.

Appellant contends the trial court erred: (1) by giving a statute (Evid. Code, § 1103) ex post facto application, (2) by admitting evidence of appellant's interest in guns, (3) by admitting "non-admission" statements of appellant, and (4) by excusing a trial juror without good cause.

We find no error and affirm the judgment.

### FACTUAL BACKGROUND

There being no insufficiency of evidence claim we synopsize the facts.

David Halsey (appellant), Jeff Logan (the victim), Tim Dilworth, Tom Cannon, and Tommy Canup were members of a band called "Kamikaze Saloon." They all lived in South Carolina. In July 1990, to better the band's chances, the five band members moved to California, initially living in apartment 4, 19543 Victory Boulevard, Van Nuys. Babette Merck, appellant's girlfriend, her five-year-old son, and Amy Collins, Tommy Canup's girlfriend, soon joined them.

By September 1990, only Tim Dilworth and the victim lived in apartment 4. Tom Cannon lived alone in another apartment, and the others lived in apartment 7, across from apartment 4.

On September 11, 1990, about 8 p.m., in apartment 4, the band began practice. Some members were drinking. A non-band-member, Luke, was drunk and spilled beer on instruments and disrupted the practice. The practice ended, band members left but Luke remained, passed out on the couch.

Some hours later, approximately 2:30 a.m., September 12, the victim went to apartment 7 and spoke to Babette Merck. The victim, who had been angry

at Luke, had blood on his hands. Ms. Merck went to apartment 4 with the victim and saw blood on the couch and wall. The victim told her he had fought with Luke. Luke was not in the apartment.

Ms. Merck returned to her apartment and awakened appellant. He put his pants on and went to apartment 4. He and the victim got into a fight. Appellant returned to his apartment, got his five-shot .32-caliber pistol, walked back to apartment 4, and shot the victim.

Appellant, again returning to his apartment, told his girlfriend to call an ambulance. Appellant then tried to help the victim until the ambulance arrived.

The victim died a few hours later from a gunshot wound to his lower back.

### DISCUSSION

1. *Appellant contends the trial court erred by giving ex post facto application to Evidence Code section 1103.*

After the crime, but before trial, Evidence Code section 1103 was amended, in pertinent part, as follows:

"(a) In a criminal action, evidence of the character or a trait of character (in the form of an opinion, evidence of reputation, *or evidence of specific instances of conduct*) of the victim of the crime for which the defendant is being prosecuted is not made inadmissible by Section 1101 if the evidence is:

"(1) Offered by the defendant to prove conduct of the victim in conformity with the character or trait of character.

"(2) Offered by the prosecution to rebut evidence adduced by the defendant under paragraph (1).

"(b) *In a criminal action, evidence of the defendant's character for violence or trait of character for violence (in the form of an opinion, evidence of reputation, or evidence of specific instances of conduct) is not made inadmissible by Section 1101 if the evidence is offered by the prosecution to prove conduct of the defendant in conformity with the character or trait of character and is offered after evidence that the victim had a character for violence or a trait of character tending to show violence has been adduced by the defendant under paragraph (1) of subdivision (a)."*

■    Appellant argues the trial court applied this amended statute to admit evidence of his character for violence, a violation of the ex post facto clause of the United States Constitution (art. I, § 10).

We do not consider the merits of appellant's claim[1] because his trial counsel not only did not object on this ground (Evid. Code, § 353) but called the trial court's attention to the amended statute and urged the trial court to apply it.[2] His strategic purpose in doing so was apparent. The amended statute permitted the defense to prove "specific instances" of violence by the *victim.*

---

[1]The claim appears to be without merit. (*Collins* v. *Youngblood* (1990) 497 U.S. 37 [111 L.Ed.2d 30, 110 S.Ct. 2715]; *Tapia* v. *Superior Court* (1991) 53 Cal.3d 282 [297 Cal.Rptr. 592, 807 P.2d 434].)

[2]During a protracted discussion about the admissibility of character evidence for violence, the following colloquy occurred:

"Mr. Bruckner [Defense counsel]: Before we—I believe that it's possible that both the court and the D.A. are not aware of [*sic*] section 1103 has been amended. I've something from the legislative alert memo from the California Attorneys for Criminal Justice which indicates that there was an assembly bill 263 which was signed by the Gove[r]nor on March 15th of '91 which mentioned the Evidence Code 1103 which indicates that basically what it does in 1103 (A), it address[es] that the defense may put on evidence of specific instances of conduct of the victim.

"The Court: Of the victim. We're talking about specific instances of the defendant.

"Mr. Bruckner: Right, and with regard to (B), it address[es], it changes I think 1103 (B) which is also amended and reads, 'That in a criminal action evidence of the defendant's character [sic] or trait of character for violence in the form of opinion, evidence of reputation or evidence of specific instance of conduct is not made inadmissible by 1101 if the evidence is offered by the prosecution to prove conduct of the defendant in conformity of the character or trait of character and offered after evidence that the victim had character for violence or trait of character has been offered for violence has been adduced by paragraph 1-A.'

"What I am indicating to the court pursuant to assembly bill 263 which was made into law on March 15th, '91.

"The Court: And effective on that date?

"Mr. Bruckner: Yes. It says my understanding that it became effective upon signing, that it amended 1103 to add specific instance of misconduct or conduct but also says that once the defense puts on such specific instances of conduct, that the prosecution then put on the same type of evidence with regard to the defendant.

"The Court: And based on that your [*sic*] not objecting to it.

"Mr. Bruckner: My understanding, yes. Once I think that certainly it's been circumstantial evidence of specific instances of misconduct that the defense has illicited [*sic*] in its trial already.

"The Court: Isn't that limited to prosecution for sexual offenses?

"Mr. Bruckner: No, Your Honor. If the court would like to see—

"The Court: Please. I see.

"Mr. Bruckner: Just in good faith, Your Honor, I intend to put on specific instances of conduct to support the proposition that the victim in this case had a violent propensity, and with that in mind it would be hypocritical for me to object to the prosecution doing the same to the defendant.

"The Court: In that case I notice there's no objection."

Appellant's contention is not well taken.

2. *Appellant contends the trial court erred in admitting evidence of his interest in guns.*

On direct examination, Tommy Canup testified:

"Q. [Prosecutor] Now, do you also know people in Easely, South Carolina that knew the defendant, David Halsey?

"A. Yes. Very few, but the same as I knew Jeff [the victim].

"Q. Did he have a reputation in that community for being a violent or nonviolent person?

"A. Sort of violent because of all the weapons that were always around him.

". . . . . . . . . . . . . . . . . . . . . . . . .

"Q. Based on everything you know about the defendant, do you personally have an opinion as to whether he is a violent person?

"A. Personally, yes. But I—just because of all the guns and all the firearms and everything that was constantly present."

Appellant contends the trial court erred in admitting this testimony because it was irrelevant to his character for violence. Appellant, having failed to timely object at trial[3] (Evid. Code, § 353), may not object on appeal.

Appellant also asserts the trial court erred in permitting certain testimony by Amy Collins. On direct she testified that appellant had a reputation for being "wild" and in her opinion he was violent. No error is claimed concerning this testimony. On cross-examination, defense counsel sought to disprove any basis for her opinion. He elicited she had never seen appellant do anything violent, point a gun at anyone, etc.

On redirect examination, to explain the basis of her opinion, Ms. Collins testified appellant habitually had guns around, she had seen a photograph of him with "an assortment of dangerous weapons," and she had seen him blow something up.

---

[3]Before Mr. Canup testified, the trial court had ruled that "with respect to the specific acts, I am going to at this point preclude the People from doing that on their direct[.] Depending on what the cross is[,] I may permit it on redirect."

The trial court did not err in admitting this unobjected to rehabilitation evidence. (Evid. Code, § 353.)

3. *Appellant contends the trial court erred by admitting his "non-admission" statements.*

■   Appellant contends the trial court erred in admitting his irrelevant statements.[4] He is mistaken.

The officer who transported appellant from the homicide scene to the police station, Officer Lint, testified:

"Well, he told me that he had shot his friend.

"He said that he shot him one time.

"He went on to explain that they or that the victim had come into his apartment, started screaming and yelling.

"They ended up in a fight, the defendant and the victim, out on the balcony.

"The defendant got away from the victim and went back into his apartment where he got his gun, went back to the victim and shot him one time.

"The defendant went on to tell me that *he was a good shot and probably a better shot than I was and that he shot a lot,* and I believe that was basically it."

Appellant asserts the italicized portion of his statement is more prejudicial than probative and should have been excluded under Evidence Code section 352. We disagree. Appellant's firearm expertise was relevant to his intent, relevance not outweighed by his inappropriate boastfulness.

Appellant also argues the trial court should not have permitted Tommy Canup to testify to a statement appellant made about a month after the killing:

"I shot the son of a bitch, and if I have [*sic*] to do it again, I would."

We find no abuse of the trial court's Evidence Code section 352 discretion. The epithet, which defense counsel claimed was inflammatory, is—by today's standards—more quaint than excitatory.

---

[4]Appellant appears to argue his statements were not relevant, not being relevant they were not "admissions," and not being "admissions" they were not admissible. This analysis is flawed. (Evid. Code, § 1220.)

4. *Appellant contends the trial court erred in excusing a trial juror without good cause.*

The morning after the prosecutor made his opening statement, a juror (Mr. Korff) asked to speak to the court. With counsel and appellant present, he said that earlier that morning a fellow juror, Mr. Margolis, made some comments in the hallway about the case. Mr. Margolis said "he did not feel the opening statement by the district attorney was very effective" and "this was an easier case than he thought it would be."

The trial court separately questioned Mr. Margolis and the other jurors. Mr. Margolis denied making the particular statements but said he did comment about the attorneys. The trial court found Mr. Margolis "evasive," determined he had made the statements attributed to him by Mr. Korff, found he had violated the court's repeated order not to discuss the case, and lacked "ability to follow my instructions and to maintain an open mind and remain objective throughout the duration of the proceedings."

Pursuant to section 1089,[5] the trial court excused Mr. Margolis and replaced him with an alternate juror. ■ Appellant claims error. We disagree.

Although a trial court has discretion to determine good cause, it is a "limited discretion" (*People* v. *Collins* (1976) 17 Cal.3d 687, 696 [131 Cal.Rptr. 782, 552 P.2d 742]) and the inability of the excused juror to perform his duty "must appear in the record as a demonstrable reality." (*Ibid.*)

Many cases have considered the exercise of this trial court discretion. Few have found abuse.

Good cause to excuse a juror has been found in all the following circumstances: a juror, father of five daughters, said he would be prejudiced against anyone charged with rape (*People* v. *Harrison* (1910) 13 Cal.App 555 [110 P. 345] [error for trial court *not* to find good cause]); juror said "I don't think I would be fair to the prosecution" (*People* v. *Green* (1956) 47 Cal.2d 209 [302 P.2d 307]); juror worked in same office as defendant's brother, their desks 25 feet apart (*People* v. *Abbott* (1956) 47 Cal.2d 362 [303 P.2d 730]);

---

[5]In pertinent part, it provides: "If at any time, whether before or after the final submission of the case to the jury, a juror dies or becomes ill, or upon other good cause shown to the court is found to be unable to perform his duty, or if a juror requests a discharge and good cause appears therefor, the court may order him to be discharged and draw the name of an alternate, who shall then take his place in the jury box, and be subject to the same rules and regulations as though he had been selected as one of the original jurors."

juror worked with defendant's father for twelve years and lived next door to defendant's sister (*People* v. *Taylor* (1961) 189 Cal.App.2d 490 [11 Cal.Rptr. 480]); juror asked to be excused because she was moving out of state (*People* v. *Green* (1971) 15 Cal.App.3d 524 [93 Cal.Rptr. 84]); juror upset, can't follow court's instructions (*People* v. *Collins, supra,* 17 Cal.3d 687); juror *charged* with a felony and two misdemeanors (*People* v. *Farris* (1977) 66 Cal.App.3d 376 [136 Cal.Rptr. 45]); for two days a juror tried to barter with other jurors; he'd vote not guilty regarding one defendant if other jurors would vote guilty regarding the other defendant (*People* v. *Guzman* (1977) 66 Cal.App.3d 549 [136 Cal.Rptr. 163] [error for trial court *not* to find good cause]); juror absent because he took his wife to an eye doctor (*People* v. *Hall* (1979) 95 Cal.App.3d 299 [157 Cal.Rptr. 107]); testimony made juror physically and emotionally ill (*People* v. *Van Houten* (1980) 113 Cal.App.3d 280 [170 Cal.Rptr. 189]); in knife assault trial juror failed to disclose during voir dire that she had been victim of attempted rape with a knife (*People* v. *Diaz* (1984) 152 Cal.App.3d 926 [200 Cal.Rptr. 77] [error for trial court *not* to find good cause]); juror's mind wanders, can't concentrate (*Mitchell* v. *Superior Court* (1984) 155 Cal.App.3d 624 [202 Cal.Rptr. 284] [a "legal necessity" which justified trial court's declaration of a mistrial]); juror intimidated by other jurors, not sure she could vote her conscience (*People* v. *Warren* (1986) 176 Cal.App.3d 324 [221 Cal.Rptr. 768]); juror wanted to be excused to avoid losing wages (*People* v. *Aikens* (1988) 207 Cal.App.3d 209 [254 Cal.Rptr. 30]); over the weekend juror observed defendant join her church (*People* v. *Hecker* (1990) 219 Cal.App.3d 1238 [268 Cal.Rptr. 884]; see also *People* v. *Thomas* (1990) 218 Cal.App.3d 1477, 1484-1485 [267 Cal.Rptr. 865]; *People* v. *Daniels* (1991) 52 Cal.3d 815, 863-866 [277 Cal.Rptr. 122, 802 P.2d 906].)

We conclude the trial court acted within its discretion in excusing Mr. Margolis.

DISPOSITION

The judgment is affirmed.

Lillie, P. J., and Johnson, J., concurred.