[Civ. No. 46810. Second Dist., Div. Three. Oct. 26, 1976.]

RICHARD M. MORSE, Plaintiff and Respondent, v.
SOUTHERN PACIFIC TRANSPORTATION
COMPANY, Defendant and Appellant.

**COUNSEL**

Merrill K. Albert for Defendant and Appellant.

Boccardo, Blum, Lull, Niland, Teerlink & Bell, Edward J. Niland and Michael G. Briski for Plaintiff and Respondent.

**OPINION**

**POTTER, J.**—Defendant Southern Pacific Transportation Company appeals from an order of the superior court granting plaintiff Richard Morse a new trial in an action for damages for personal injury under the Federal Employers' Liability Act (45 U.S.C.A. § 51 et seq., hereinafter "FELA"). The court granted plaintiff's motion for new trial on the ground of error of law in admitting evidence not admissible under the rule of *Eichel* v. *New York Central R. Co.* (1963) 375 U.S. 253 [11 L.Ed.2d 307, 84 S.Ct. 316]. The evidence, admitted at trial over plaintiff's

objection, was of plaintiff's retirement for disability and receipt of disability pension payments under the Railroad Retirement Act. (45 U.S.C. § 228b(a)4.)

Plaintiff, a 49-year-old electrician who had been employed by the defendant for almost 20 years, was injured at work on June 4, 1972, when he slipped on some oil and fell on his back. He lost consciousness and suffered a disc injury resulting in two hospitalizations. He was given physical therapy and traction. Subsequently, in July 1973, he required back surgery. In his complaint, filed January 12, 1973, plaintiff alleged the injury was due to defendant's negligence and sought, inter alia, compensation for lost wages.

The jury trial began December 4, 1974. During the trial, plaintiff's counsel requested, in chambers, an order *in limine* to prohibit defendant's counsel from introducing evidence that plaintiff was receiving a disability pension under the Railroad Retirement Act. Defense counsel argued that defendant was not seeking a credit for any payments to the plaintiff but had "the right to prove to this jury" that the plaintiff had elected to retire and was "receiving retirement income," including the amount of such income. Defense counsel claimed such evidence was "really tied to the question" of whether the plaintiff was "in fact disabled" and admissible on the issue of malingering.

Plaintiff's counsel cited the United States Supreme Court decision in *Eichel* v. *New York Central R. Co.,* 375 U.S. 253 [11 L.Ed.2d 307, 84 S.Ct. 316], in support of his contention that the evidence should be excluded. The trial court, without reading *Eichel,* ruled the evidence admissible.

Thereafter, in the jury's presence and over plaintiff's continuing objections, numerous references were made to the fact of plaintiff's retirement which had been made retroactive to June 1972, and to his receipt of disability payments. Defense counsel referred to the retirement and the receipt of disability benefits during his cross-examination of the plaintiff[1] and of two of plaintiff's witnesses (a doctor and an economist), in his opening statement and in his closing argument. Two of defendant's medical witnesses on direct examination also referred to the retirement and benefits.

[1]The fact that plaintiff's retirement was effective June 8, 1972, was brought out in this cross-examination.

Plaintiff's economist testified that the plaintiff's wage loss from the 1972 accident to December 31, 1974, amounted to $29,367. He also testified that the present value of the future wage loss, assuming plaintiff would have worked until 65 and then would have taken a general retirement, was $151,091. On cross-examination, defense counsel asked if the economist took "into consideration in the past wage loss computations that [plaintiff] has been on disability since June 8, 1972?" The economist replied he had "just computed [the] past wage losses" without deductions. Later, defense counsel asked if it would "be too difficult . . . to figure out past wage loss if we assume that the gentleman was receiving $365 monthly because of a disability retirement." The economist asked if defense counsel wanted him to deduct these payments, and defense counsel indicated that he did. At that point, plaintiff's counsel objected specifically to any such calculation. The trial court sustained this objection and indicated that it was not going to tell the jury to deduct any amount.

The plaintiff asked for $273,000 of which approximately $180,000 was for past and future wage loss. The jury returned a 9-3 verdict for the plaintiff for $61,500.

The trial court granted plaintiff's motion for a new trial "on the ground of error in law, occurring at the trial and excepted to by plaintiff," stating as its reason "that the court erred in admitting evidence not admissible under *Eichel* . . ." Defendant filed this appeal from that order, on February 28, 1975.

### Contentions

The only issue presented on this appeal is whether, in an action under the FELA, the admission of evidence that the plaintiff was receiving disability pension payments under the Railroad Retirement Act was an error in law which justified the order granting a new trial.[2]

The defendant claims no error of law occurred and, therefore, the order granting a new trial should be reversed and the judgment on the jury's verdict affirmed, because: (1) the evidence was admissible under California Evidence Code section 352, as expounded in the California Supreme Court decision in *Hrnjak* v. *Graymar, Inc.,* 4 Cal.3d 725 [94

---

[2]No contention has been made that the ruling admitting the evidence was not prejudicial if erroneous.

Cal.Rptr. 623, 484 P.2d 599, 47 A.L.R.3d 224]; and (2) the evidence was admissible under federal case law.

Plaintiff contends that the admission of the evidence was an error in law and, therefore, the order granting a new trial should be affirmed because: (1) federal law, not California law, governs this action, and the strict exclusionary rule established by the *Eichel* decision is controlling; and (2) even if California law were controlling, the evidence should have been excluded under the *Hrnjak* test.[3]

*Discussion*

■ We are persuaded that the United States Supreme Court decision in *Eichel* v. *New York Central R. Co.,* 375 U.S. 253 [11 L.Ed.2d 307, 84 S.Ct. 316], is controlling of the case at bench and requires affirmance of the order of the trial court granting a new trial to plaintiff.

*Eichel* held that in an action brought under the FELA, evidence that the plaintiff was receiving disability benefits under the Railroad Retirement Act was inadmissible as a matter of law. The defendant, like the defendant herein, offered evidence that the plaintiff was receiving monthly disability pension payments under the Railroad Retirement Act, for the purpose of impeaching the testimony of the plaintiff as to his motive for not returning to work and as to the permanency of his injuries. The trial court excluded the evidence. On appeal from a judgment for the plaintiff, the Court of Appeals for the Second Circuit reversed, holding the exclusion of the evidence to be prejudicial error. The Supreme Court reversed the judgment of the Court of Appeals.

The Supreme Court first noted the conceded impropriety of considering the disability pension payments in mitigation of plaintiff's damages,[4] saying in this connection (375 U.S. at p. 254 [11 L.Ed.2d at pp. 308-309]): " 'The Railroad Retirement Act is substantially a Social Security Act for employees of common carriers. . . . The benefits received under such a system of social legislation are not directly attributable to the contributions of the employer, so they cannot be considered in mitigation of the damages caused by the employer.' *New York, N. H. & H. R. Co.* v. *Leary,* 204 F.2d 461, 468, cert. denied, 346 U.S. 856. [Fn. omitted.]"

---

[3]Since we find *Eichel* controls, we need not determine this question.

[4]Defendant herein also informed the trial court, and contends on appeal, that it did not "seek to reduce the jury verdict by arguing any offset or credit for said payments."

The court next considered and rejected the contention that the evidence of the disability payments was admissible as bearing on the extent and duration of plaintiff's disability and as showing a motive for his not returning to work after the accident. It said in this respect (375 U.S. at pp. 255-256 [11 L.Ed.2d at pp. 309-310]): "We disagree. In our view the likelihood of misuse by the jury clearly outweighs the value of this evidence. Insofar as the evidence bears on the issue of malingering, there will generally be other evidence having more probative value and involving less likelihood of prejudice than the receipt of a disability pension. *Moreover, it would violate the spirit of the federal statutes if the receipt of disability benefits under the Railroad Retirement Act of 1937, 50 Stat. 309, as amended, 45 U. S. C. § 228b (a) 4, were considered as evidence of malingering by an employee asserting a claim under the Federal Employers' Liability Act.* We have recently had occasion to be reminded that evidence of collateral benefits is readily subject to misuse by a jury. *Tipton* v. *Socony Mobil Oil Co., Inc.,* 375 U.S. 34. It has long been recognized that evidence showing that the defendant is insured creates a substantial likelihood of misuse. Similarly, we must recognize that the petitioner's receipt of collateral social insurance benefits involves a substantial likelihood of prejudicial impact. We hold therefore that the District Court properly excluded the evidence of disability payments. [Fns. omitted.]" (Italics added.)

The Supreme Court thus clearly held that exclusion of evidence of these collateral benefits was required if the spirit and fundamental policies of the FELA and the Railroad Retirement Act were to be preserved. Strict and absolute exclusion was deemed necessary to avoid the "substantial likelihood of prejudicial impact."

A long line of post-*Eichel* cases in the federal courts have followed this rule. (*Caughman* v. *Washington Terminal Company* (D.C. Cir. 1965) 345 F.2d 434, 436 [120 App.D.C. 217]; see e.g., *Blake* v. *Delaware and Hudson Railway Company* (2d Cir. 1973) 484 F.2d 204, 205; *Fuhrman* v. *Reading Company* (3d Cir. 1971) 439 F.2d 10, 14; *Page* v. *St. Louis Southwestern Railway Co.* (5th Cir. 1965) 349 F.2d 820, 821-822; *Raycraft* v. *Duluth, Missabe and Iron Range Railway Co.* (8th Cir. 1973) 472 F.2d 27, 28.)

Despite the above authorities, defendant erroneously contends that federal law admits such evidence on the issue of malingering and on the issue of plaintiff's continued disability. As authority it cites three Court of Appeals cases which were all decided before *Eichel*: *Page* v. *St. Louis*

*Southwestern Railway Company* (5th Cir. 1963) 312 F.2d 84 [98 A.L.R.2d 639]; *Reiner* v. *Northern Pacific Terminal Co. of Oregon* (9th Cir. 1958) 259 F.2d 438; and *Simmons* v. *Union Terminal Company* (5th Cir. 1961) 290 F.2d 453, cert. den. 368 U.S. 913 [7 L.Ed.2d 131, 82 S.Ct. 194]. Moreover, when *Page* v. *St. Louis, supra,* 312 F.2d 84, was retried and came up on appeal again, an opposite decision was reached. The Fifth Circuit held that it must reverse on the basis of *Tipton* v. *Socony Mobil Oil Co.,* 375 U.S. 34 [11 L.Ed.2d 4, 84 S.Ct. 1], and *Eichel,* because "[b]oth Tipton and Eichel reflect a strong policy against the use of such collateral source evidence in FELA . . . cases. [Fn. omitted.]" (349 F.2d at p. 822.) Defendant's reliance on *Reiner* v. *Northern Pacific Terminal Co. of Oregon, supra,* and *Simmons* v. *Union Terminal Company, supra,* is equally misplaced since these cases were relied on in the *Eichel* Court of Appeals decision which was reversed by the Supreme Court.

Defendant also contends that California law, not *Eichel,* governs the admissibility of the evidence in this case, and relies upon *Hrnjak* v. *Graymar, Inc., supra,* 4 Cal.3d 725 (which declined to adopt the *Eichel* rule[5] in a common law negligence case) to justify the trial court's original ruling admitting the evidence of plaintiff's disability. *Hrnjak* did not, however, consider the effect of *Eichel* in an FELA case.

■    *Eichel* is controlling in an FELA case because of its holding that admitting such evidence "would violate the spirit of the federal statutes." (375 U.S. at p. 255 [11 L.Ed.2d at p. 309].) That "spirit" was defined in *Kernan* v. *American Dredging Co.,* 355 U.S. 426, 432 [2 L.Ed.2d 382, 388-389, 78 S.Ct. 394], as follows: "[T]he general congressional intent was to provide liberal recovery for injured workers . . . ." The Supreme Court's interpretation of the FELA "is the supreme law to be applied by all courts, federal and state" in FELA actions. (*Chesapeake & Ohio Railway Co.* v. *Kuhn,* 284 U.S. 44, 47 [76 L.Ed. 157, 160, 52 S.Ct. 46].)

■    As the Supreme Court said in *Dice* v. *Akron, C. & Y. R. Co.,* 342 U.S. 359, 361-362 [96 L.Ed. 398, 402-403, 72 S.Ct. 312], in a case involving the validity of releases in FELA cases: "Congress in § 1 of the Act granted petitioner a right to recover against his employer for damages negligently inflicted. State laws are not controlling in determining what the incidents of this federal right shall be. *Chesapeake & Ohio R. Co.* v. *Kuhn,* 284 U.S. 44; *Ricketts* v. *Pennsylvania R. Co.,* 153 F.2d

---

[5]Our Supreme Court applied the discretionary rule of California Evidence Code section 352.

757, 759. Manifestly the federal rights affording relief to injured railroad employees under a federally declared standard could be defeated if states were permitted to have the final say as to what defenses could and could not be properly interposed to suits under the Act. Moreover, only if federal law controls can the federal Act be given that uniform application throughout the country essential to effectuate its purposes. See *Garrett* v. *Moore-McCormack Co.,* 317 U.S. 239, 244, and cases there cited. Releases *and other devices designed to liquidate or defeat injured employees' claims* play an important part in the federal Act's administration. Compare *Duncan* v. *Thompson,* 315 U.S. 1. Their validity is but one of the many interrelated questions that *must constantly be determined in these cases according to a uniform federal law.*" (Italics added.)

█ The fact that the admissibility of evidence is normally considered a "procedural" question does not make California law controlling.

In *Brown* v. *Western R. of Alabama,* 338 U.S. 294, 296 [94 L.Ed. 100, 102-103, 70 S.Ct. 105], the Supreme Court took occasion to "point up the impossibility of laying down a precise rule to distinguish 'substance' from 'procedure,'" and added: "Fortunately, we need not attempt to do so. A long series of cases previously decided, from which we see no reason to depart, makes it our duty to construe the allegations of this complaint ourselves in order to determine whether petitioner has been denied a right of trial granted him by Congress. This federal right cannot be defeated by the forms of local practice."

The same view was taken in *Arnold* v. *Panhandle & S.F.R. Co.,* 353 U.S. 360, 361 [1 L.Ed.2d 889, 891-892, 77 S.Ct. 840], another FELA case. There the Supreme Court said: "The petitioner having asserted federal rights governed by federal law, it is our duty under the Act to make certain that they are fully protected, as the Congress intended them to be. We therefore cannot accept interpretations that nullify their effectiveness, for '. . . *the assertion of federal rights,* when plainly and reasonably made, *is not to be defeated under the name of local practice.' Davis* v. *Wechsler,* 263 U.S. 22, 24. See *Dice* v. *Akron, Canton & Y. R. Co.,* 342 U.S. 359; *Brown* v. *Western R. Co.,* 338 U.S. 294." (Italics added.)

Similarly, our California Supreme Court has recently stated that "the purposes underlying [a federal statute] . . . must still be served, and may not be frustrated by state substantive limitations couched in procedural language. [Fn. omitted.]" (*Williams* v. *Horvath,* 16 Cal.3d 834, 841 [129 Cal.Rptr. 453, 548 P.2d 1125].) Although *Williams* was an action under

the federal Civil Rights Act (42 U.S.C.A. § 1983), our Supreme Court, in announcing the aforementioned principle, referred to FELA authorities. Thus, it said (16 Cal.3d at p. 841, fn. 3): "Much of the law on the question of the extent state procedure may be applied to federal questions in state court has arisen in the context of the Federal Employers' Liability Act. (See Hill, *Substance and Procedure in State FELA Actions—The Converse of the Erie Problem?* (1956) 17 Ohio St. L.J. 384; Note, *State Enforcement of Federally Created Rights* (1960) 73 Harv.L.Rev. 1551.) Professor Wright notes that in the early days there was 'doubt as to where to draw the line between substance and procedure, but there was no doubt that there was some area of procedure which the state could continue to regulate for itself even in federal claim cases. Perhaps this is still true today, but if so *the area of procedure has become so shrunken as to fall within the maxim de minimis.*' (Wright, Law of Federal Courts (1963) § 45, pp. 149-150.)" (Italics added.)

Moreover, in another case on the specific issue of admissibility of evidence in an FELA case brought in a California state court, our Supreme Court held that federal, not state, law controlled. In *Davee* v. *Southern Pac. Co.,* 58 Cal.2d 572 [25 Cal.Rptr. 445, 375 P.2d 293], the trial court refused to admit in evidence a state construction safety order regarding scaffolds. The judgment was for the defendant railroad. Plaintiff, a bridge carpenter, injured while working on a railroad trestle, appealed and contended the exclusion of this evidence was prejudicial error.[6]

Our Supreme Court affirmed. It noted the "guiding rule of federal uniformity" (58 Cal.2d at pp. 575-576) and the "often enunciated general principle that . . . state enactments may not be applied in a manner so as to significantly vary or determine the result of the litigation" (58 Cal.2d at p. 574). The court concluded that the safety order was "offered . . . into evidence for a purpose [of] affecting if not altering the substantive rights of the parties under federal law" (58 Cal.2d at p. 576) and, therefore, its admissibility was governed by federal law (which rendered it inadmissible). In *Davee,* the excluded evidence was offered on the issue of liability; in the instant case, the collateral source evidence affected damages. We do not however, deem that difference significant. Issues relating to the measure of damages in an FELA case in a state court are also governed by federal law. (*Ches. & Ohio Ry.* v. *Kelly,*

---

[6]The *Davee* trial court also refused to instruct the jury regarding the state's scaffold order.

241 U.S. 485, 491 [60 L.Ed. 1117, 1112-1113, 36 S.Ct. 630]; *Blake* v. *Delaware and Hudson Railway Company* (2d Cir. 1973) 484 F.2d 204, 205; *Resner* v. *Northern Pacific Railway* (1973) 161 Mont. 177 [505 P.2d 86, 90].)

## *Disposition*

By admitting evidence of disability pension payments in this FELA action, the trial court erred. This evidence was inadmissible under *Eichel* v. *New York Central R. Co., supra,* 375 U.S. 253. Having recognized its error, the trial court correctly granted plaintiff's motion for a new trial.

The order granting a new trial is affirmed.

Cobey, Acting P. J., and Allport, J., concurred.