[No. S099479. July 3, 2003.]

RONALD G. LUND, Plaintiff and Respondent, v.
SAN JOAQUIN VALLEY RAILROAD, Defendant and Appellant.

2

**COUNSEL**

Dowling, Aaron & Keeler, William T. McLaughlin II, Timothy R. Sullivan; Lane Powell Spears Lubersky and Michael B. King for Defendant and Appellant.

Crosby, Heafey, Roach & May and Joseph P. Mascovich for Association of American Railroads as Amicus Curiae on behalf of Defendant and Appellant.

Crosby, Heafey, Roach & May, Joseph P. Mascovich; Brasher Law Firm and William A. Brasher for The Burlington Northern and Santa Fe Railway Company and Union Pacific Railroad Company as Amici Curiae on behalf of Defendant and Appellant.

Miller & Reivitis, Kimberly A. Miller, Michael E. Reivitis; and Charlotte E. Costan for Plaintiff and Respondent.

## OPINION

**KENNARD, J.**—Under the Federal Employers Liability Act (FELA), a railroad employee injured by the employer's negligence may sue the employer for negligence. The action may be filed in either a state or a federal court. (45 U.S.C. § 56.) This case raises two questions pertaining to actions brought in California courts.

First, should the trial court tell the jury that the injured employee is not entitled to benefits under California's workers' compensation law? The answer is no, unless a case presents unusual circumstances where the probative value of this information outweighs its prejudicial effect.

Second, if the employer rejects the employee's pretrial settlement offer and the employee at trial obtains a judgment more favorable than the offer, may the trial court award the employee prejudgment interest under California law? The answer is no, because federal law prohibits such an award.

## I. FACTS

Plaintiff Ronald G. Lund worked as a trackman for defendant San Joaquin Valley Railroad. In the spring of 1997, he and other employees were replacing worn railroad ties. After replacing those ties with new ones, the workers used a "hydrospiker," a machine that drives spikes through the ties and into prepunched holes in tie plates under the rails. The hydrospiker did not drive all the spikes in correctly. Plaintiff's supervisor then told him to use a "spike maul," a sledgehammer with an elongated head, to drive in spikes that the hydrospiker had only partially driven in. While swinging the spike maul, plaintiff tore two tendons in his shoulder. The injury permanently damaged his shoulder, rendering him unable to perform his job.

Plaintiff sued defendant for negligence under the FELA. He alleged that the spikes could not be driven in with the spike maul because they were too big for the holes in the tie plates, and that defendant should have given him a

pneumatic spike driver, or air gun, to accomplish the task. Before trial, plaintiff made a settlement offer, which defendant rejected.

At plaintiff's request, the trial court told prospective jurors: "State Workers' Compensation is not available to the plaintiff in this case." At the close of evidence, the trial court reiterated that comment: "As I instructed you at the beginning of the case . . . the employee does not have the right to Workers' Compensation benefits . . . even though . . . the alleged accident did occur here in the state of California." The jury found defendant negligent, and awarded plaintiff damages of $538,570. Relying on California law, the court awarded plaintiff an additional $22,280.57 in prejudgment interest under Civil Code section 3291.

The Court of Appeal affirmed the judgment. We granted defendant's petition for review.

## II. THE FELA (45 U.S.C. § 51 ET SEQ.)

■ In California, injured employees are generally entitled to workers' compensation benefits, irrespective of whether the employer was at fault. (Lab. Code, § 3200 et seq.) But those benefits are not available to *railroad* employees who suffer on-the-job injuries; their right of recovery is governed by the FELA, which permits recovery only if the employer acted negligently. (45 U.S.C. § 51.)

The FELA, enacted by Congress in 1908, is "founded on common-law concepts of negligence and injury" (*Urie v. Thompson* (1949) 337 U.S. 163, 182 [93 L.Ed. 1282, 69 S.Ct. 1018]) to "provide a federal remedy for railroad workers who suffer personal injuries as a result of the negligence of their employer or their fellow employees" (*Atchison, T. & S. F. R. Co. v. Buell* (1987) 480 U.S. 557, 561 [94 L.Ed.2d 563, 107 S.Ct. 1410]). Through the FELA, Congress intended to create " 'uniformity throughout the Union' with respect to railroads' financial responsibility for injuries to their employees" (*Norfolk & Western R. Co. v. Liepelt* (1980) 444 U.S. 490, 493, fn. 5 [62 L.Ed.2d 689, 100 S.Ct. 755]) and to "eliminate a number of traditional defenses to tort liability and to facilitate recovery in meritorious cases" (*Atchison, T. & S. F. R. Co., supra*, at p. 561). Courts construe the FELA liberally to fulfill the act's remedial purposes. (*Consolidated Rail Corporation v. Gottshall* (1994) 512 U.S. 532, 543 [129 L.Ed.2d 427, 114 S.Ct. 2396]; *Atchison, T. & S. F. R. Co., supra*, at p. 562.)

■ As noted at the outset, a FELA action can be brought in either federal or state court. When, as here, a FELA action is brought in state court, state law governs procedural questions, while federal law governs substantive

issues. (*St. Louis Southwestern R. Co. v. Dickerson* (1985) 470 U.S. 409, 411 [84 L.Ed.2d 303, 105 S.Ct. 1347].) State procedure does not apply, however, if it results in the denial of a federal right granted by Congress. (*Arnold v. Panhandle & S. F. R. Co.* (1957) 353 U.S. 360, 361 [1 L.Ed.2d 889, 77 S.Ct. 840]; *Brown v. Western R. of Alabama* (1949) 338 U.S. 294, 296 [94 L.Ed. 100, 70 S.Ct. 105]; see also Wright, Law of Federal Courts (4th ed. 1983) State Enforcement of Federal Law, § 45, p. 272 [expressing the view that the applicability of state procedure in federal claim cases "has be come so shrunken as to fall within the maxim *de minimis*"].)

### III. TRIAL COURT'S INSTRUCTION ON PLAINTIFF'S INELIGIBILITY FOR STATE WORKERS' COMPENSATION BENEFITS

Defendant faults the trial court for telling the jury, at plaintiff's request, that as an injured railroad worker plaintiff was ineligible for workers' compensation benefits ordinarily available to injured employees under California law.

Because defendant had not objected at trial to the challenged instruction, the Court of Appeal precluded defendant from raising the issue on appeal. A party may, however, challenge on appeal an erroneous instruction without objecting at trial. (*Agarwal v. Johnson* (1979) 25 Cal.3d 932, 949 [160 Cal.Rptr. 141, 603 P.2d 58]; *Griesel v. Dart Industries, Inc.* (1979) 23 Cal.3d 578, 583, fn. 4 [153 Cal.Rptr. 213, 591 P.2d 503]; Code Civ. Proc., § 647.) To support its conclusion that defendant did not preserve the issue, the Court of Appeal relied on the rule that when a trial court gives a jury instruction that is legally correct but is " 'too general, lacks clarity, or is incomplete' " (*Conservatorship of Gregory* (2000) 80 Cal.App.4th 514, 520 [95 Cal.Rptr.2d 336], quoting 7 Witkin, Cal. Procedure (4th ed. 1997) Trial, § 272, pp. 318–319), a party may challenge the instruction on appeal only if it had asked the trial court to give a clarifying instruction. ■ But here defendant does not contend that the instruction was too general, lacked clarity, or was incomplete. Rather, defendant argues that the instruction conveyed irrelevant prejudicial information to the jury—that plaintiff was ineligible for workers' compensation. No objection was necessary to preserve this claim. We therefore address its merits.

Ordinarily, the first step in analyzing that issue would be to determine whether the instruction pertained to a state procedure, or instead was a substantive matter, and thus, as noted earlier, governed by federal law. Here, however, we need not undertake such an evaluation. ■ Under both federal and California law the jury in a FELA action should, *as a general rule*, not be told whether the injured railroad worker can also seek recovery from any other source, such as workers' compensation. Because federal and California

law on this subject are identical, we need not decide which one controls.[1] Below, we discuss the pertinent features of both laws.

## A. *Federal Law*

■ If an injured plaintiff gets some compensation for the injury from a collateral source such as insurance, that payment is, under the collateral source doctrine, not deducted from the damages that the plaintiff can collect from the tortfeasor. (See 1 Dobbs, Law of Remedies (2d ed. 1993) § 3.8(1), pp. 372–373.) The collateral source rule is "generally accepted in the United States" (*Helfend v. Southern Cal. Rapid Transit Dist.* (1970) 2 Cal.3d 1, 6 [84 Cal.Rptr. 173, 465 P.2d 61]; see also Rest.2d Torts, §§ 920, 920A), and the federal courts apply the rule in FELA actions (*Eichel v. New York Central R. Co.* (1963) 375 U.S. 253, 254 [11 L.Ed.2d 307, 84 S.Ct. 316] (*Eichel*)).

The question whether to *tell* the jury about collateral compensation is analytically distinct from the collateral source rule itself. But because the two issues are so closely linked, courts often draw no distinction between the two. A recent federal appellate decision observed: "The case law sometimes confuses these interrelated principles, moving effortlessly from the substantive to the evidentiary strands of the collateral source doctrine, and back, with little differentiation." (*Fitzgerald v. Expressway Sewerage Const., Inc.* (1st Cir. 1999) 177 F.3d 71, 73.)

The United States Supreme Court held in *Eichel, supra,* 375 U.S. 253, that in a FELA case brought in federal court the jury should not be told that the plaintiff has received benefits from a collateral source. In *Eichel,* the defendant sought to show that the plaintiff had received disability pension benefits under the Railroad Retirement Act of 1937 (a collateral source), arguing the evidence was relevant to prove that the plaintiff was malingering. The high court held the evidence to be inadmissible, noting that because collateral source evidence is "readily subject to misuse by a jury," the likelihood of misuse "clearly outweighs" the value of such evidence. (*Eichel, supra,* at p. 255.)

Often, as in *Eichel, supra,* 375 U.S. 253, the question whether to tell the jury about a collateral source of recovery arises when the plaintiff *can* recover collateral benefits. The issue here is slightly different—whether the jury should be told that the plaintiff *cannot* recover a collateral benefit. Federal

---

[1] In *Morse v. Southern Pac. Transportation Co.* (1976) 63 Cal.App.3d 128, 133–138 [133 Cal.Rptr. 577], the Court of Appeal held that federal law controls in deciding whether the jury should be told that the plaintiff in a FELA action has received collateral benefits. Because we hold that federal and state law are identical on the issue before us, we need not decide whether *Morse* is correct.

courts, however, have reached the same result in both situations: ordinarily the jury should not be given that information.

In *Stillman v. Norfolk & Western Ry. Co.* (4th Cir. 1987) 811 F.2d 834, the trial court barred the plaintiff, Stillman, from telling the jury in a FELA action that he was ineligible for workers' compensation benefits. The federal appellate court upheld the ruling. It explained: "Stillman's ineligibility for workers' compensation benefits was completely irrelevant to the issues presented in this case, and allowing the jury to consider such information could have prejudiced the Railroad. [Citation.] Moreover, we note that defendants in FELA cases are not permitted to inform the jury that a plaintiff has received benefits from a collateral source. [Citations.] We perceive no reason for a different rule when the plaintiff in a FELA case seeks to inform the jury of the absence of benefits from a collateral source." (*Id.* at p. 838.)

■ Federal courts, and those state courts that have viewed the question as being governed by federal law, have consistently held that, *in general*, the jury in a FELA action should not be told that the plaintiff *cannot* recover benefits from workers' compensation or other collateral sources. (*Stillman v. Norfolk & Western Ry. Co., supra*, 811 F.2d at p. 838 ; *Weinell v. McKeesport Connecting Railroad Company* (3d Cir. 1969) 411 F.2d 510, 512; *Kodack v. Long Island Rail Road Company* (2d Cir. 1965) 342 F.2d 244, 247; *Snyder v. Lehigh Valley Railroad Company* (3d Cir. 1957) 245 F.2d 112, 116; *Hileman v. Pittsburgh & Lake Erie R. Co.* (1996) 546 Pa. 433 [685 A.2d 994, 996–997] [applying state and federal law]; see also *CSX Transportation, Inc. v. Whittler* (Fla.Dist.Ct.App. 1991) 584 So.2d 579, 584 [citing *Stillman* with approval, but holding that the issue was waived by failure to object]; *Kansas City Southern Ry. Co. v. Stokes* (Tex.App. 2000) 20 S.W.3d 45, 49 [agreeing with *Stillman* without explaining whether it is applying federal or state law]; *Parsons v. Norfolk and Western Ry. Co.* (1991) 185 W.Va. 718 [408 S.E.2d 668, 673–674] [harmless error for the plaintiff to tell jury in closing argument that a FELA action is the plaintiff's "only means of recovery"].) Plaintiff here has not cited any decision to the contrary.

B. *California Law*

Like the federal courts, California has adopted the collateral source rule. (*Hrnjak v. Graymar, Inc.* (1971) 4 Cal.3d 725, 729 [94 Cal.Rptr. 623, 484 P.2d 599] (*Hrnjak*); *Helfend v. Southern Cal. Rapid Transit Dist., supra*, 2 Cal.3d 1, 6; but see Civ. Code, § 3333.1, partially abrogating the rule in actions against a health care provider based on professional negligence.) As we have explained: "The collateral source rule expresses a policy judgment in favor of encouraging citizens to purchase and maintain insurance for personal injuries and for other eventualities. . . . If we were to permit a tortfeasor to

mitigate damages with payments from plaintiff's insurance, plaintiff would be in a position inferior to that of having bought no insurance, because his payment of premiums would have earned no benefit. Defendant should not be able to avoid payment of full compensation for the injury inflicted merely because the victim has had the foresight to provide himself with insurance." (*Helfend, supra*, 2 Cal.3d at p. 10.)

And like the federal courts, California has adopted the closely related principle that, as a general rule, jurors should not be told that the plaintiff can recover compensation from a collateral source. We so held in *Hrnjak, supra*, 4 Cal.3d 725. There, the trial court allowed the defendant in a personal injury action to introduce evidence that the plaintiff had received insurance benefits, asserting the evidence was relevant to the plaintiff's "motives in seeking medical help and his credibility as a witness." (*Id.* at p. 728.) We held the trial court abused its discretion under Evidence Code section 352 in admitting this evidence of collateral source benefits. We explained: "The potentially prejudicial impact of evidence that a personal injury plaintiff received collateral insurance payments varies little from case to case. Even with cautionary instructions, there is substantial danger that the jurors will take the evidence into account in assessing the damages to be awarded to an injured plaintiff. Thus, introduction of the evidence on a limited admissibility theory creates the danger of circumventing the salutary policies underlying the collateral source rule. Admission despite such ominous potential should be permitted only upon a persuasive showing that the evidence sought to be introduced is of substantial probative value." (*Hrnjak, supra*, 4 Cal.3d at pp. 732–733, fn. omitted.)

Plaintiff here argues the rule should be different when it is the plaintiff who seeks to offer evidence that benefits from a collateral source are *not* available. He contends, as he did at trial, that unless so told, the jury may well have assumed that he was receiving those benefits *in addition to* the damages sought under the FELA, leading the jury to conclude that he was seeking double recovery for his work-related injuries. In support, plaintiff cites *Bohme v. Southern Pac. Co.* (1970) 8 Cal.App.3d 291 [87 Cal.Rptr. 286] (*Bohme*).

In *Bohme*, a railroad employee sued his employer under the FELA for injuries suffered in a fall at work. At trial, both the plaintiff and the trial court told the jury that he was ineligible for workers' compensation benefits. The jury returned a verdict in favor of the plaintiff. On appeal, the railroad argued the jury should not have been told of the plaintiff's ineligibility for workers' compensation. The Court of Appeal disagreed. It reasoned that most jurors know that an injured employee can get workers' compensation benefits under state law, and unless told that such compensation is not available to the plaintiff, they may wonder why the plaintiff is suing the employer. It is to

prevent such speculation, the *Bohme* court said, that a trial court can tell the jury of the plaintiff's ineligibility for worker's compensation. (*Bohme, supra,* 8 Cal.App.3d at pp. 298–299.)

As the *Bohme* court observed, not telling jurors in a FELA action of the plaintiff employee's ineligibility for workers' compensation may lead them to speculate why the injured employee is suing the employer. We note, however, that if jurors are told that the injured employee is ineligible for workers' compensation benefits, they may consider it unfair that in a FELA action the injured worker can recover only if the employer's negligence caused the injury. That concern might, in turn, lead the jury to award damages regardless of fault.

There is an additional reason why the jury in a FELA action should not be told of the plaintiff's ineligibility for state workers' compensation benefits. As defendant's amicus curiae, the Association of American Railroads, points out in its brief, many injured railroad employees *can* receive compensation for their injuries, *regardless of fault,* under the Railroad Retirement Act of 1974. (45 U.S.C. §§ 231–231v.) That law permits some permanently injured railroad workers, depending on age and years of service, to receive a disability annuity. As noted earlier, the collateral source rule prohibits a defendant in a FELA action from telling the jury of the *availability* to the injured worker of this collateral source of compensation. Given that prohibition, it would be unfair to allow a plaintiff in a FELA action to tell the jury of the *unavailability* of workers' compensation benefits.

■ For the reasons given above, we hold that in a FELA action brought in state court the jury, *as a general rule,* should not be told of the injured employee's ineligibility for benefits flowing from California's workers' compensation law or any other collateral source. We disapprove *Bohme v. Southern Pac. Co., supra,* 8 Cal.App.3d 291, to the extent that it is inconsistent with this conclusion.[2]

■ There may, however, be *unusual circumstances* that would permit such disclosure in a FELA action. Trial courts may find, in the appropriate

---

[2] Although trial courts in FELA actions ordinarily should not tell the jury of the employee's *ineligibility* for workers' compensation benefits, in some circumstances, such as when the jury asks about the availability of workers' compensation, the trial court may instruct the jury not to *discuss or consider* whether the employee has received such benefits. (See *Snyder v. Lehigh Valley Railroad Company, supra,* 245 F.2d at p. 116 [When the jury asked if the plaintiff in a FELA case was receiving workers' compensation, the trial court "should have admonished the jury that the plaintiff's receipt or non-receipt of workmen's compensation was not in the case; that they must put it out of their minds."].) A somewhat similar instruction, BAJI No. 1.04, tells juries not to discuss or consider whether the defendant has insurance for the plaintiff's claim.

exercise of discretion under Evidence Code section 352, that the probative value of such evidence outweighs its prejudicial effects. As we have held in the past, evidence that the plaintiff in a personal injury action *has* received compensation from a collateral source should be admitted "only upon a persuasive showing that the evidence sought to be introduced is of substantive probative value." (*Hrnjak, supra,* 4 Cal.3d at p. 733.) That reasoning also applies when, as here, the question is whether to tell the jury that a plaintiff *has not* received compensation from a collateral source.

Federal law, too, grants trial courts discretion not to apply the collateral source rule in those unusual situations where the probative value of collateral source evidence outweighs its prejudicial effects. For instance, in *Santa Maria v. Metro-North Commuter R. R.* (2d Cir. 1996) 81 F.3d 265, 272–273, the federal appellate court noted that "the general rule in FELA cases is that evidence of payments . . . from collateral sources is not admissible" but held that "such evidence may be admissible if the plaintiff puts his financial status in issue." Similarly, in *Moses v. Union Pacific R. R.* (8th Cir. 1995) 64 F.3d 413, 416, the court acknowledged the "familiar law" that the defendant may not inquire into the plaintiff's collateral sources of compensation, but found an exception to this rule in "these limited kinds of situations, where plaintiff's case itself has made the existence of collateral sources of probative value." (See also *McGrath v. Consolidated Rail Corp.* (1st Cir. 1998) 136 F.3d 838, 841 ["We do not read [the high court's decision in] *Eichel* as requiring the per se exclusion of collateral source evidence in FELA cases"]; *Savoie v. Otto Candies, Inc.* (5th Cir. 1982) 692 F.2d 363, 371, fn. 8; *Sheehy v. Southern Pac. Transp. Co.* (9th Cir. 1980) 631 F.2d 649, 652.)

Here, a highly unusual circumstance supported the trial court's instruction on plaintiff's ineligibility for workers' compensation. Plaintiff testified that in 1991, before the job injuries in this case, he injured his shoulder when he slipped while climbing up the side of a boxcar. On cross-examination, plaintiff said that he had filed a claim for workers' compensation benefits because of that injury, and that he had signed a series of documents prepared by his doctor, each entitled "30-day continuing report of disability," pertaining to that application. He also admitted that six months after the injury, he told defendant in a job application that he had no previous work-related injuries, and that in discovery proceedings in this case he said he did not recall making a previous demand for workers' compensation.[3]

---

[3] The record does not explain how plaintiff could have received workers' compensation for the 1991 injury. In his brief, plaintiff states he sustained the injury while working for a subcontractor, not the railroad, and therefore his injury was not covered by the FELA.

In his closing argument to the jury, defense counsel repeatedly mentioned plaintiff's 1991 workers' compensation claim. He attacked plaintiff's credibility, pointing out that plaintiff's application for workers' compensation stated that the injury occurred on February 27, 1991, but that plaintiff had seen his doctor for treatment of the shoulder on February 12, 1991. Defense counsel argued that the present damage to plaintiff's shoulder did not occur when he swung the spike maul in 1997, but that it resulted because his 1991 injury was aggravated by his work on the railroad in the ensuing six years.

■ Thus, plaintiff's previous injury, and his application for workers' compensation benefits as a result of that injury, were significant issues at trial. We consider it highly likely that plaintiff's statement about workers' compensation for the 1991 injury would lead the jury to conclude that in this case he also received such benefits, and that he was seeking yet another recovery under the FELA. To prevent a misconception by the jury that plaintiff was seeking double recovery, the trial court did not abuse its discretion in telling the jury of plaintiff's ineligibility for workers' compensation.

## IV. PREJUDGMENT INTEREST

The trial court awarded plaintiff $22,280.57 in prejudgment interest under Civil Code section 3291. That section states that if a plaintiff in a personal injury action makes a settlement offer which the defendant does not accept before trial or within 30 days after the offer, whichever occurs first, and the plaintiff thereafter "obtains a more favorable judgment," the defendant must pay "interest at the legal rate of 10 percent per annum calculated from the date of the plaintiff's first offer . . . which is exceeded by the judgment, and interest shall accrue until the satisfaction of judgment." (*Ibid.*) The Court of Appeal upheld the award, rejecting defendant's claim that prejudgment interest could not be awarded under the FELA. As we shall explain, the Court of Appeal was wrong.

The high court's decision in *Monessen Southwestern R. Co. v. Morgan* (1988) 486 U.S. 330 [100 L.Ed.2d 349, 108 S.Ct. 1837] (*Monessen*) is dispositive here. There, a railroad employee permanently injured his back in a

fall at work. He brought a FELA action against his employer in a Pennsylvania court. The jury awarded him $125,000 in damages. In addition, the trial court awarded him approximately $27,000 in prejudgment interest under rule 238 of the Pennsylvania Rules of Civil Procedure. The United States Supreme Court held the prejudgment interest award to be improper.

The high court first determined whether prejudgment interest was procedural (governed by state law) or substantive (governed by federal law). The Pennsylvania court had classified its prejudgment interest rule as procedural, but the high court disagreed. It explained that prejudgment interest is a form of damages, and " 'the proper measure of damages [under the FELA] is inseparably connected with the right of action,' and therefore is an issue of substance that 'must be settled according to general principles of law as administered in the Federal courts.' " (*Monessen, supra,* 486 U.S. at p. 335.)

The high court in *Monessen* then considered whether federal law authorized the award of prejudgment interest in a FELA action and held that it did not, noting that nothing in the FELA or any other federal law permitted such an award. (*Monessen, supra,* 486 U.S. at pp. 336–339.)

Here, the Court of Appeal attempted to distinguish *Monessen,* reasoning that California's prejudgment interest law permits prejudgment interest only in "exceptional circumstances," whereas Pennsylvania's prejudgment interest rule is "generally applicable." This exaggerates the difference between the two provisions. Under California law, plaintiff here was entitled to prejudgment interest if, after making a settlement offer that the defendant refused, plaintiff thereafter obtained a more favorable judgment at trial. By contrast, the plaintiff in *Monessen* was entitled to prejudgment interest under Pennsylvania law unless the defendant made a settlement offer and the plaintiff's recovery did not exceed 125 percent of the offer. (See *Morgan v. Monessen Southwestern Ry. Co.* (1986) 513 Pa. 86 [518 A.2d 1171, 1177].) These minor differences provide no basis for the distinction the Court of Appeal sought to draw between the high court's decision in *Monessen* and this case. The two laws have similar purposes: They both permit plaintiffs to recover prejudgment interest only if certain conditions designed to encourage pretrial settlements are satisfied.

The Court of Appeal described California's prejudgment interest law as reflecting "the strong state interest in controlling the conduct of litigation in the state's courts." But that interest is virtually identical to the purpose of Pennsylvania's prejudgment interest rule, which was at issue in *Monessen* and which was created to achieve the "fundamental goal of prompting meaningful negotiations in major cases so as to unclutter the courts." (*Morgan v. Monessen Southwestern Ry. Co., supra,* 518 A.2d at p. 1177.) Given

the high court's conclusion in *Monessen* that the policy underlying Pennsylvania's prejudgment interest rule had to give way to Congress's decision *not* to allow prejudgment interest in FELA actions, we see no basis for concluding otherwise with regard to the policy reflected in California's prejudgment interest law.

Congress enacted the FELA to achieve national uniformity in personal injury actions by railroad employees against their employers. (*New York Central R. R. Co. v. Moore-McCormack Co. Winfield* (1917) 244 U.S. 147, 149 [61 L.Ed. 1045, 37 S.Ct. 546]; *Morse v. Southern Pac. Transportation Co., supra*, 63 Cal.App.3d 128, 136.) That goal would be frustrated if FELA plaintiffs could recover prejudgment interest simply by filing their actions in state court rather than in federal court, where such recovery is precluded. Even if prejudgment interest could be considered procedural rather than substantive, "state procedure must give way if it impedes the uniform application of the federal statute essential to effectuate its purpose, even though the procedure would apply to similar actions arising under state law." (*McCarroll v. L.A. County etc. Carpenters* (1957) 49 Cal.2d 45, 61–62 [315 P.2d 322].)

## DISPOSITION

We reverse the judgment of the Court of Appeal, and we direct that court to modify the superior court's judgment by striking the award of prejudgment interest and to otherwise affirm the judgment.

George, C. J., Werdegar, J., Chin, J., Brown, J., Moreno, J., and Premo, J.,[*] concurred.

Appellant's petition for a rehearing was denied September 24, 2003, and the opinion was modified to read as printed above. Baxter, J., did not participate therein.

---

[*]Associate Justice of the Court of Appeal, Sixth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.